STATE of Wisconsin, Plaintiff-Respondent,

v.

Brian T. OINAS, Defendant-Appellant.†

Court of Appeals

*No. 84–2147–CR.  Submitted on briefs May 30, 1985.—*
*Decided July 17, 1985.*
(Also reported in 373 N.W.2d 463.)

For the defendant-appellant, the cause was submitted on the brief of *Andrew Mishlove,* of Glendale.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *William L. Gansner,* assistant attorney general.

† Petition to review denied.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.    Brian Oinas appeals his judgment of conviction for first-degree sexual assault, party to a crime, contrary to secs. 940.225(1)(c) and 939.05, Stats. He seeks a new trial on the basis that certain potentially exculpatory evidence was destroyed while in police custody. In light of the recent United States Supreme Court decision of *California v. Trombetta*, —— U.S. ——, 81 L. Ed. 2d 413 (1984), we affirm the conviction, holding the failure to preserve the evidence did not violate Oinas' right to due process.

M.M. was sexually assaulted by several men during the early morning hours of August 15, 1982. She led the police back to the scene of the assault. At the scene, a wallet was discovered. An officer picked up the wallet and examined its contents. Inside was Oinas' driver's license, a plastic identification card and a traffic ticket, again bearing Oinas' name and address. The wallet was placed in a paper envelope.

One of the participants to the assault, Daniel Baas, agreed to plead guilty to a reduced charge in exchange for his testimony at trial. Baas admitted having a limited role in the offense but asserted the most active participant was Oinas .

Oinas testified on his own behalf at trial and denied taking part in the assault of M.M. He admitted being at the scene with Baas, M.M and another man. However, when the other two began raping M.M., Oinas testified he got back in his car and started to drive away. He had only gone a short distance when he turned around, returned to the scene and asked Baas and the other man to leave M.M. alone. Then he testified he drove home.

As an explanation of how his wallet was left at the scene, Oinas testified that he had lent his wallet to Baas earlier in the evening. He explained that Baas

had borrowed Oinas' car and, as Baas did not have a valid driver's license, he took Oinas' wallet, including the driver's license, in order to have a valid license in the event of his being stopped. Oinas stated that Baas had not yet returned the wallet when it was discovered by the police. Baas denied having borrowed the wallet on the day of the offense. The prosecution during closing argument argued to the jury that the presence of the wallet at the scene showed that the wallet fell out of Oinas' pocket "when he had his pants down . . . ."

On appeal, Oinas claims the mishandling of the wallet by the police officers prevented him from performing a fingerprint analysis on the wallet.[1] Oinas further asserts that had Baas' fingerprints been discovered on the wallet, Baas' credibility would have been impeached and it would have helped to diffuse the prosecution's argument that Oinas had been an active participant in the assault.

The issue of negligent destruction of potentially exculpatory evidence was recently discussed in the United States Supreme Court case of *California v. Trombetta*, —— U.S. ——, 81 L. Ed. 2d 413 (1984). In *Trombetta*, California law enforcement officials had destroyed breath samples of several suspected drunk drivers prior to their trials. After unsuccessfully attempting to suppress the breath analysis test results for failure to preserve the samples, the drivers appealed.[2] The California

---

[1] Expert testimony at the post-conviction hearing indicated that although it was difficult to develop latent fingerprints from leather, it was possible using certain laboratory techniques. The expert further testified that any such fingerprints on leather would dissipate within about forty-eight hours. At any rate, subsequent police handling of the wallet would have rendered any attempted analysis an exercise in futility.

[2] Two drivers were subsequently convicted and petitioned for writs of habeas corpus; the other two did not submit to trial but sought direct appeal of the trial court orders. All of the appeals were consolidated by the California Court of Appeal.

Court of Appeal held that due process mandated that "law enforcement agencies must establish and follow rigorous and systematic procedures to preserve the captured evidence or its equivalent for the use of the defendant." *Id.* at 419. The United States Supreme Court reversed.

The Court recognized that whatever duty the constitution imposes on the states to preserve exculpatory evidence must be limited to evidence that might be expected to play a significant role in the suspect's defense.[3] It is not enough to allege that the destroyed evidence had possibilities of being exculpatory. Instead, to meet this standard of constitutional materiality, the following two criteria must both exist: (1) the evidence must possess an *exculpatory value* that was *apparent* to those who had custody of the evidence, either by government authority or vicariously so, before the evidence was destroyed, *and* (2) the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Id.,* 81 L. Ed. 2d at 422.

Our supreme court, in *State v. Walstad,* 119 Wis. 2d 483, 528 n. 18, 351 N.W.2d 469, 491 (1984), pointed out that *Trombetta* is supportive of the general propositions contained in that case. Based on that statement, we have no difficulty adopting the *Trombetta* criteria for Wisconsin. The evidence in question on this appeal fails to meet these criteria.

It is obvious that the officer had no idea of the alleged "wallet-switching" when he returned with the victim to the scene of the crime; he picked up the wallet and examined it for the sole purpose of discovering who

---

[3] The Court also observed that the breath samples were not destroyed in a calculated or conscious effort to circumvent disclosure.

it belonged to. The evidence at the time it was handled had only an inculpatory value; it would be incongruous to assume the officer would have thought it apparent that the wallet possessed any exculpatory value whatsoever toward the owner of the wallet.[4]

We need not address the second criteria concerning the unavailability of comparable evidence. Both criteria must be satisfied in order to raise a claim resulting from negligent destruction of evidence. The defendant has not satisfied the first test. On that basis alone, his argument fails.

We do not perceive the evidence to have played a significant role in Oinas' defense; no exculpatory value was apparent prior to the evidence's destruction. Therefore, with the *Trombetta* criteria as our guide, we affirm.

*By the Court.*—Judgment affirmed.

---

[4] As an aside, we note that its exculpatory value even now is tentative at best. Had Baas' fingerprints appeared on the wallet, it would only have proven that Baas had handled the wallet sometime in the preceding forty-eight hours. Baas and Oinas both admitted to being at the scene of the crime. Even if the jury had inferred that it was Baas who dropped the wallet, that inference alone would not have exculpated the defendant of the commission of the crime. Evidence that one person or another may have dropped the wallet does not *per se* remove them from involvement in the crime.