STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas J. HOLT, Defendant-Appellant.†

Court of Appeals

*No. 84–1711–CR. Oral argument July 18, 1985.—Decided December 4, 1985.*
(Also reported in 382 N.W.2d 679.)

†Petition to review pending.

110

111

113

114

For the defendant-appellant, briefs were filed by *Steven D. Phillips,* assistant state public defender. Oral argument by *Steven D. Phillips.*

For the plaintiff-respondent, a brief was filed by *Bronson C. La Follette,* attorney general and *Barry M.*

*Levenson,* assistant attorney general. Oral argument by *Barry M. Levenson.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. Thomas J. Holt appeals from the judgment convicting him of first-degree murder and first-degree sexual assault contrary to secs. 940.01(1) and 940.225(1)(a), Stats. He claims that the sexual assault prosecution was barred by sec. 939.71, Stats., that the circuit court erroneously failed to instruct the jury on second-degree murder and committed various additional evidentiary and other errors and that he was entitled to credit against his sentence. The state no longer disputes, and we agree, that Holt should receive credit for time spent in custody in Illinois, but we otherwise affirm the convictions.

On the night of June 20, 1979, Holt followed Alice Alzner, a resident of Lake Forest, Illinois, when she and a friend drove home after spending the evening at a bar in Kenosha. After Alzner dropped her friend off, Holt followed Alzner to her house, forced her into his car and drove back to Kenosha. He apparently attempted to have sex with her but later claimed not to know whether they had sex or not because he was "totally out of it"[1] from drinking beer and smoking marijuana. He stated that Alzner kneed him in the groin and that he "must have freaked out," hit her in the face and "may have" choked her by tying her bra and sweater around her neck. He then buried her in his neighbor's yard. When Alzner's unclothed body was

---

[1] Holt did not testify at trial. His statements made to Kenosha and Lake Forest police on June 23 and 24, 1979 were placed in evidence by the state.

found, her bra and long-sleeved sweater were knotted tightly around her neck.

Holt was convicted in Illinois of aggravated kidnapping, battery and felony murder and was sentenced to death. In 1982, the Illinois Supreme Court reversed the felony murder conviction, ruling that Illinois lacked jurisdiction over the crime since the murder occurred in Wisconsin. Holt was then tried and convicted in Wisconsin for first-degree murder, first-degree sexual assault and theft from a person and was sentenced to consecutive prison terms of life, ten years and three years, respectively.

## Motion to Dismiss

Holt argues first that the trial court should have granted his motion to dismiss the sexual assault charge because it was barred under sec. 939.71, Stats., due to the prior Illinois convictions on two counts of aggravated kidnapping. Section 939.71 provides:

**Limitation on the number of convictions.** If an act forms the basis for a crime punishable under more than one statutory provision of this state or under a statutory provision of this state and the laws of another jurisdiction, a conviction or acquittal on the merits under one provision bars a subsequent prosecution under the other provision unless each provision requires proof of a fact for conviction which the other does not require.

Illinois Revised Statutes ch. 38, sec. 10–2(a)(3)(1978), provides that a kidnapper is guilty of aggravated kidnapping when he inflicts great bodily harm or commits another felony upon his victim. Holt was convicted of two counts of aggravated kidnapping,

117

one alleging great bodily harm to the victim and the other alleging sexual intercourse with the victim, a female person not his wife, by force and against her will. The facts to be proved under the first count were thus: (1) kidnapping, and (2) infliction of great bodily harm. The facts to be proved under the second count were: (1) kidnapping; (2) sexual intercourse; (3) the victim was female and not Holt's wife; (4) the intercourse was achieved by force, and (5) the intercourse was against the victim's will.

Section 940.225(1)(a), Stats., provides that first-degree sexual assault is committed when a person has sexual contact or intercourse with another person without consent of that person and causes pregnancy or great bodily harm to the victim. The facts to be proved in the instant case were thus: (1) sexual contact or intercourse; (2) lack of consent, and (3) great bodily harm.

Holt contends that the Wisconsin charge of first-degree sexual assault requires proof of no fact which was not required for the two Illinois counts of aggravated kidnapping, taken together, and is therefore barred by sec. 939.71, Stats. He admits, however, that his argument succeeds only if the elements of the two aggravated kidnapping charges are added together. Because sec. 939.71 refers to individual provisions and does not allow the adding together of claims to circumvent the "additional fact" test, we reject Holt's argument.

■ Our supreme court has made clear that when multiple charges arise from a single course of conduct, the additional fact test is to be strictly construed; as long as conviction under each provision requires proof of a

fact that the other does not require, the charges will not be found to be multiplicitous. *State v. Eisch,* 96 Wis.2d 25, 291 N.W.2d 800 (1980); *State v. Rabe,* 96 Wis.2d 48, 63, 291 N.W.2d 809, 816 (1980).

Kidnapping aggravated by great bodily harm, kidnapping aggravated by rape and sexual assault aggravated by great bodily harm are three different offenses. None is a lesser-included offense of any of the others. The Wisconsin sexual assault charge does not require proof of kidnapping. The first count of aggravated kidnapping under the Illinois statute did not require proof of sexual assault and the second did not require proof of great bodily harm. The requirements of sec. 939.71, Stats., are met and the circuit court did not err in refusing to dismiss the first-degree sexual assault charge.

## *Sufficiency of the Evidence*

Holt argues next that the sexual assault conviction was not supported by sufficient evidence. We disagree. The evidence, considered most favorably to the state and the conviction, is not so insufficient in probative value and force that it can be said as a matter of law that no reasonable jury could find guilt beyond a reasonable doubt. *See State v. Stanfield,* 105 Wis.2d 553, 563–64, 314 N.W.2d 339, 344 (1982).

Circumstantial evidence may establish the fact of sexual intercourse. *Hagenkord v. State,* 94 Wis.2d 250, 254–55, 287 N.W.2d 834, 837 (Ct. App. 1979), *aff'd in part and rev'd in part,* 100 Wis.2d 452, 302 N.W.2d 421 (1981). Holt admitted that he intended to have sex with Alzner. Alzner's body was found unclothed and vaginal

swabs taken at the autopsy revealed the presence of spermatozoa and acid phosphatase, the enzyme found in semen. A semen-stained blanket found in the trunk of the car Holt drove the night of the crime was further circumstantial evidence of intercourse.

Holt argues that no scientific evidence was presented identifying the semen found in Alzner's vagina as his. While the presence or absence of such serological typing evidence is a matter for the jury to consider, it is not necessary for conviction. *See, e.g., Hagenkord,* 94 Wis.2d at 254–55, 287 N.W.2d at 837.

Holt also contends that the testimony of one of the state's expert witnesses indirectly refutes that of another. Pathologist John Sanson testified that he performed the autopsy on Alzner less than three days after her death, that he found a high concentration of acid phosphatase in her vagina and that acid phosphatase begins to deteriorate after about four days. Sanson's testimony thus raised the implication that the enzyme found in Alzner's vagina could be no more than three or four days old. Chemist Michael Johnson testified that he examined the stained blanket six days after the incident and that an acid phosphatase test allowed him to conclude that the stain was in fact a semen stain.

Holt argues that Johnson's identification of the enzyme after six days refutes Sanson's implication that the enzyme in Alzner's vagina could be only three or four days old. We reject this argument. Sanson stated that the enzyme begins to deteriorate after about four days but gave no limits as to how long deterioration takes under varying conditions or how much time can elapse before the enzyme is no longer identifiable. The testimony of the two experts is not irreconcilable.

Moreover, the weight and credibility to be given to testimony is a matter for the jury, and even where testimony of a single witness is inconsistent, the jury is free to choose which evidence, if any, to believe. *Nabbefeld v. State,* 83 Wis.2d 515, 529, 266 N.W.2d 292, 299 (1978).

Continuing his argument of insufficient evidence, Holt contends that a conviction for sexual assault requires the victim to have been alive during the alleged intercourse and that there is inadequate evidence in the present case to support a finding that Alzner was alive if and when intercourse occurred. The state agrees that sexual intercourse with a dead body does not violate Wisconsin's sexual assault laws but argues the jury could reasonably have believed that Alzner was alive when Holt had intercourse with her.

■

We conclude that in a rape-murder case where the exact sequence of events cannot be proved, the jury may reasonably infer, though it need not do so, that the victim was alive during the sexual assault, at least in the absence of evidence of necrophilic tendencies on the part of the accused. *See Hines v. State,* 473 A.2d 1335, 1349 (Md. Ct. Spec. App. 1984). Such an inference, because permissive, does not improperly shift to the defendant the burden of disproving an element of the crime. *See Sandstrom v. Montana,* 442 U.S. 510, 514–15 (1979).

Holt argues that an assailant with no necrophilic tendencies could have intercourse with his victim without realizing that she was dead. In such a case, the defendant is free to conduct his defense accordingly, and the jury is free to believe him. No such defense was presented here.

*Denial of Second-Degree Murder Instruction*

Holt's next major contention is that the circuit court erred when it refused to instruct the jury on second-degree murder but did give an instruction on intoxication. The state concedes that if the evidence justified the intoxication instruction, it was error to refuse the second-degree instruction, since a successful intoxication defense negates intent and reduces first-degree murder to second-degree murder. *State v. Brown,* 118 Wis.2d 377, 382–83, 348 N.W.2d 593, 596 (Ct. App. 1984). The state argues, however, that no reversible error occurred because there was insufficient evidence to support the intoxication instruction so that it should not have been given in the first place.

A threshold issue must be addressed before we reach the merits of the state's argument. At trial, the state did not object to Holt's request for the second-degree murder instruction and actually requested the intoxication instruction. Holt therefore contends that the state is estopped to argue that the intoxication instruction should not have been given.[2]

The general rule on appeal is that failure to object to a jury instruction in timely fashion constitutes a waiver of the objection. *State v. Baldwin,* 101 Wis.2d 441, 445, 304 N.W.2d 742, 746 (1981). In *Brown,* 118 Wis.2d at 381–82, 348 N.W.2d at 596, the court of appeals somewhat equivocally applied this general waiver rule to the state as respondent. The court did not expressly state that the waiver rule applies equally to a respondent on appeal. Instead, it said, "Failure to

[2] We certified this issue to the supreme court on September 18, 1985. The certification was denied on October 15, 1985.

object to the form of a jury instruction generally constitutes a waiver of any error in the instructions [citation omitted]," and then continued, "Even were we not to hold the state estopped from raising this issue, we would have to conclude there to have been no error in the trial court's giving the intoxication instruction." *Id.*

Given the tentative nature of the *Brown* court's holding on this issue, the fact that the court proceeded to address the merits of the state's argument and the additional fact that the court neither specifically addressed nor even identified the question of whether the general waiver rule should apply to a respondent seeking to uphold the lower court's decision, we view the *Brown* language as in the nature of *dicta*.

When an appellate court intentionally takes up, discusses and decides a question germane to a controversy, such a decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision. *State v. Kruse,* 101 Wis.2d 387, 392, 305 N.W.2d 85, 88 (1981). However, in *Brown* there is no indication that the issue of whether the waiver rule applies equally to respondents seeking to uphold the trial court's determination was "taken up, discussed, and decided" by the court of appeals. Therefore, we do not consider *Brown* to be controlling precedent, and we address the issue afresh.

We are persuaded that in the present case the state ought not to be held to have waived its right to argue that the intoxication instruction should not have been given because the purposes behind the rule requiring objection in the trial court to avoid waiver would not be advanced by its application here.

The general rule that an objection not made to the trial court is waived is rooted in principles of efficient judicial administration. Those principles demand that convictions remain in repose unless error has been committed or an injustice has been done. *See State v. Dyess,* 124 Wis.2d 525, 540, 370 N.W.2d 222, 230 (1985). Contemporaneous objection gives the trial court an opportunity to correct its own errors, *Bavarian Soccer Club, Inc. v. Pierson,* 36 Wis.2d 8, 15, 153 N.W.2d 1, 4 (1967), and thereby works to avoid the delay and expense incident to appeals, reversals and new trials which might have been unnecessary had the objections been properly raised in the lower court. *See* 5 Am. Jur.2d *Appeal and Error* § 545 (1962). Moreover, the waiver rule prevents a party from deliberately setting up the record for appeal by sitting silently by while error occurs and then seeking reversal if the result is unfavorable. *See Sadowski v. Bombardier Ltd.,* 539 F.2d 615, 618 (7th Cir. 1976).

In contrast, a respondent on appeal seeks to uphold rather than reverse the result reached at trial. The very policies of judicial efficiency which underlie the general waiver rule argue against the rule's being applied to deny the respondent the right to assert a ground for upholding the trial court's decision. The respondent does not ask that the matter be tried again but merely asserts that the appellant's argument in favor of reversal is without merit.

It is well-established that if a trial court reaches the proper result for the wrong reason, it will be affirmed. *See State v. King,* 120 Wis.2d 285, 292, 354 N.W.2d 742, 745 (Ct. App. 1984). Underlying this prin-

ciple is the notion that if a second, error-free trial would lead to the same result, the first decision should be affirmed. An appellate court may sustain a lower court's holding on a theory or on reasoning not presented to the lower court. *Liberty Trucking Co. v. DILHR,* 57 Wis.2d 331, 342, 204 N.W.2d 457, 463–64 (1973). It appears to us to be inconsequential in the present case that the potential ground for upholding the trial court's decision is presented by the respondent rather than suggesting itself *sua sponte* to the appellate court.

■

We therefore hold that although the state joined in requesting the intoxication instruction, it, as respondent here, has not waived the right to claim that there was no error in failing to give the instruction on second-degree murder because the giving of the intoxication instruction, upon which the appellant's claim of entitlement is based, was error.

We emphasize that our holding is not to be construed as an uneven application of the waiver rule, favoring the state over a defendant-appellant. There are cases in which the state is the appellant. In such cases, the state seeks to reverse the trial court. We will without hesitation apply the waiver rule against the state where the issue was not first raised by it at the trial court. Similarly, in those situations, we will allow the defendant-respondent to raise any defense to the appeal even if that defense is inconsistent with the stand taken at the trial level.

Any appearance of unevenness only exists because in most criminal appeals the defendant is the appellant; therefore, the majority of times that waiver will

be applied, it will be against the defendant. That cannot, however, be equated with unfairness.

Additionally, we perceive a policy argument supporting our holding of not applying the waiver rule to the state as respondent. To apply the rule would encourage a hard-line approach against defenses and lesser-included offenses by district attorneys. As a practical matter, many district attorneys consent to instructions on defenses and lesser-included offenses when the issue is arguably close. This position avoids possible reversal in most cases.

If the waiver rule were applied against the state as respondent, prosecutors would be more wary of consenting to such instructions, fearing that if agreeing to an instruction on a defense or lesser-included offense were wrong, reversal would be automatic in a case such as the present one in which the appellant's argument for reversal depends upon that instruction having been given at trial.

We applaud the actions of those district attorneys who consent to defenses and lesser-included offenses being given in close cases. We fear a contrary result were we to rule otherwise on the waiver issue.

We turn then to the merits of the state's contention.

■

The intoxication instruction is properly given only where, viewing the evidence in the light most favorable to the defendant, a jury could reasonably find that he was so intoxicated that he lacked the intent to kill. *Larson v. State,* 86 Wis.2d 187, 195, 271 N.W.2d 647, 650 (1978). This initial determination of whether an instruction is sufficiently supported by the evidence is a question of law. *See, e.g., State v. Williford,* 103 Wis.2d

98, 112, 307 N.W.2d 277, 283 (1981). We therefore owe no deference to the trial court's determination of the question. *Ball v. District No. 4, Area Board of Vocational, Technical & Adult Education,* 117 Wis.2d 529, 537, 345 N.W.2d 389, 394 (1984).[3]

"In order to place intoxication in issue in a given case, it will be necessary for the defendant to come forward with some evidence of his impaired condition." *State v. Strege,* 116 Wis.2d 477, 485–86, 343 N.W.2d 100, 105 (1984), quoting *State v. Schulz,* 102 Wis.2d 423, 430, 307 N.W.2d 151, 156 (1981). We find that Holt's own description of his activities on the night in question as well as the undisputed testimony of those who observed Holt that evening failed to evidence the impairment necessary to create a jury issue on intoxication.

In Holt's statements to the police on June 23 and 24, 1979, he said he was drinking heavily and smoking marijuana on the night of June 21 (sic), became "totally blitzed" and was sick four or five times. Holt's sister's

---

[3] In *State v. Brown,* 118 Wis.2d 377, 382, 348 N.W.2d 593, 596 (Ct. App. 1984), the court of appeals characterized the question of whether the evidence supported the giving of the intoxication instruction as being within the discretion of the trial court, to which the reviewing court would defer. The *Brown* court's reliance for such a proposition upon *State v. Clausen,* 105 Wis.2d 231, 240, 313 N.W.2d 819, 824 (1982), was misplaced. The trial court has discretion extending to choice of language and emphasis in instructing the jury, so long as it fully and fairly informs the jury of the rules and principles of law applicable to the particular case. *D.L. v. Huebner,* 110 Wis.2d 581, 624, 329 N.W.2d 890, 909 (1983); *State v. Vick,* 104 Wis.2d 678, 690, 312 N.W.2d 489, 495 (1981). The instructions must be framed in the light of the evidence; it is error to instruct on an issue that the evidence does not support. *Huebner,* 110 Wis.2d at 624, 329 N.W.2d at 910.

testimony at trial supported his claim of heavy consumption of liquor and beer as well as marijuana that evening and earlier in the day. There was also testimony by psychiatrist Dr. Robert Gale that Holt told him he had taken LSD that day. Holt's sister stated that Holt appeared to be intoxicated that evening but that it was hard to tell because he does not show intoxication by getting rowdy or loud. His eyes were "very glassy and red and squinty" but she saw no other signs of intoxication. At about 11:30 p.m., Holt picked up his wife at work and drove her home. She testified that she could not tell whether he had been drinking and did not observe whether or not he was driving erratically. Holt returned to the bar and continued drinking.

At about 1:30 a.m., Holt stated that he saw Alzner get into her car and drive away and he pulled out after her. He said he observed her car weaving from side to side on the road and he decided to follow her to see that she got home safely. He in fact did follow Alzner's car to her house in Lake Forest, Illinois, a drive of about thirty minutes. He remembered that when he approached her they spoke of his concern for her safety; he asked if she remembered him and she said yes. She asked if he wanted a drink and he said no; she asked him if he smoked and he said yes; he asked if she wanted to go out for a bite. The next thing he knew, she screamed, he "freaked out," hit her and told her, "let's go." He recalled that they both got into his car by the door on the driver's side. He then made a Y-turn in a driveway and drove back to Kenosha, arriving at about 3:00 a.m.

On the way, he recalled that they were smoking joints and that he stopped at a bar and bought a six-pack of Old Style beer. He parked near his mother's

house on Sixth Avenue, and he and Alzner smoked marijuana and drank beer. He stated that she was "popping pills." After thirty to forty-five minutes, he drove to the alley behind his home on 20th Avenue. He recounted that they were going to have sex, so she first took off and folded her tops and then took off her jeans and panties, folded or rolled them up, and may have put them in her purse. He had his pants down but not off. He stated that he didn't know if they had sex, but the next thing he knew she kneed him in the groin. He said he freaked out, may have hit her in the jaw or face and may have tied her bra and sweater around her neck and choked her.

He then buried her in a hole he dug in his neighbor's yard and later described the location of the site sufficiently well that Kenosha police detective Myhre drew a diagram of where to look. Holt got home at about 4:30 a.m., according to his wife's testimony, and washed up. They had a discussion, during which she testified that she could understand what he said and he seemed to understand her. He was not stumbling, getting sick, or passing out, as she had seen him on one or two other occasions when he was very drunk.

The undisputed facts, therefore, show that although Holt may have consumed a large quantity of alcohol and certain controlled substances on the night of June 20, he was functioning at a level inconsistent with his claim of impairment. He was able to recount in considerable detail most of the events of the evening, despite claiming lapses of memory at certain brief but crucial times. Neither his sister nor his wife noticed his level of functioning to be significantly impaired.

We note that in the present case there was evidence on when and over what period of time Holt in-

gested intoxicants, as well as expert testimony on their likely effect on someone of his size and history. The absence of such evidence was cited as relevant to the ruling that an intoxication instruction was properly denied in *Strege,* 116 Wis.2d at 487, 343 N.W.2d at 105. However, we do not read *Strege* to hold that such evidence is in itself always sufficient to support an intoxication instruction.

Where, as here, the undisputed evidence as to the defendant's conduct demonstrates a level of functioning inconsistent with the claimed level of intoxication, it may be held as a matter of law that even in the face of expert opinion testimony favoring the defendant's claim, a jury could not have reached a different conclusion. *See Loveday v. State,* 74 Wis.2d 503, 514–16, 247 N.W.2d 116, 123–24 (1976) (exclusion of psychiatrist's answers to a hypothetical regarding defendant's incapacity under effect of intoxicants to form intent to kill was harmless error because totality of testimony was such that jury would not have reached a different conclusion had the psychiatrist's testimony been admitted). *See also Boyer v. State,* 91 Wis.2d 647, 669, 284 N.W.2d 30, 39 (1979) (where defendant's testimony appears to offer a reasonable basis for submission of instructions on a lesser offense but the physical evidence contradicts that testimony so as to leave no reasonable basis for a finding of the lesser offense, the refusal to give such instructions is not error).

We hold, therefore, that the evidence of intoxication was insufficient to support a jury finding that Holt was incapable of forming the intent to kill Alice Alzner. There was thus no error in the trial court's failure to give the instruction on second-degree murder which

would have been required had there been sufficient evidence to support the intoxication instruction.

Holt claims that even if the intoxication instruction should not have been given, an instruction on second-degree murder was independently warranted by evidence that he did not in fact intend to kill Alzner. We hold that the trial court properly denied the instruction.

In order to submit a lesser-included offense instruction to the jury, there must be reasonable grounds in the evidence for both acquittal on the greater charge and conviction on the lesser. *Hawthorne v. State,* 99 Wis.2d 673, 682, 299 N.W.2d 866, 870 (1981).

The reasons given by the trial court for not instructing on second-degree murder are basically the same as those which we have held made an intoxication instruction not justified. The trial court refused to instruct on second-degree murder:

because of all of the facts in this case, and the testimony of seeing the defendant at the tavern, the fact that the defendant drove down, that he danced and had presence of mind to leave the place at around 11 o'clock, picked up his wife, dropped his wife back again going out in the car, driving down to Lake Forest in an area that is sufficiently far from Kenosha, about 30 miles and following a car down there, then coming back to Kenosha, allegedly burying the body . . . .

Absent the defense of intoxication, there was no evidence or theory presented to explain how Alzner's death by strangulation, in which two items of clothing were tightly knotted around her neck, was unintended. Holt's statements that "I do not believe that I would

have intentionally harmed this girl in any way" and that he "must have freaked out" do not constitute reasonable grounds for acquittal on the greater charge and conviction on the lesser. The trial court properly denied the instruction.

### Admission of Evidence

Holt next argues that the trial court made several erroneous evidentiary rulings.

He claims that he was denied due process when the prosecution was allowed to introduce testimony concerning the pathologist's analysis of vaginal swabs taken from the victim at the autopsy because the state had not preserved the swabs for analysis by him. Holt desired to have the swabs tested to determine the blood and enzyme type of the semen found in the swabs, no such tests having previously been performed. He claims that destruction of the swabs deprived him of a meaningful opportunity to present a complete defense, since it is possible that had such tests been performed, he would have been ruled out as the source of the semen.

Due process does not require the state to preserve evidence which is merely potentially exculpatory. *California v. Trombetta,* 467 U.S. 479, —, 81 L. Ed.2d 413, 422 (1984); *State v. Oinas,* 125 Wis.2d 487, 490, 373 N.W.2d 463, 465 (Ct. App. 1985). The duty to preserve exculpatory evidence is limited to evidence that might be expected to play a significant role in the suspect's defense. *Trombetta* at —, 81 L. Ed.2d at 422. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was ap-

parent before the evidence was destroyed and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Id.* An additional factor to be considered is the presence or absence of bad faith on the part of the state. *Id.*

In the present case, there was no bad faith on the part of the state. The state did not have possession of or destroy the swabs; rather, they were destroyed after three years in the normal course of business at the independent hospital in Kenosha where they were stored.

Furthermore, the swabs possessed no exculpatory value that was apparent at the time they were destroyed, since blood type and enzyme tests had neither been performed nor requested. Any claim that such tests would have ruled out Holt as the source of the semen found in Alzner's vagina is speculative at best. Thus, the first prong of the *Trombetta* analysis is not met and the claim fails.

Even if the *Trombetta* elements could be established, we would affirm the circuit court's ruling that Holt's request was not timely. The swabs were preserved for approximately three years, during which time Holt apparently made no demand for further testing. Sexual intercourse was an issue in the Illinois prosecution on one of the aggravated kidnapping charges, so Holt had as much reason to desire further analysis of the swabs at that time as he had during the Wisconsin prosecution, when the swabs had already been destroyed. The circuit court ruled that, in order to be timely, a demand should have been made during

the Illinois proceedings. We agree. A defendant may not sit back for years while evidence is available and then successfully move to suppress testimony about such evidence on the ground that the evidence is no longer available to the defendant for further testing.

■

Holt next argues that the trial court erred in admitting testimony concerning chemist Michael Johnson's analysis of the semen-stained blanket because the blanket could not be connected to the assault or murder and therefore the testimony was irrelevant and its probative value outweighed by its prejudicial impact. Holt concedes that the decision to admit or exclude this evidence lay within the trial court's discretion but contends that the exercise of that discretion is not reflected in the record.

If the trial court fails to set forth its reasoning in exercising its discretion to admit evidence, the appellate court will independently review the record to determine whether it provides a basis for the trial court's exercise of discretion. *State v. Pharr,* 115 Wis.2d 334, 343, 340 N.W.2d 498, 502 (1983). The record here supports the trial court's ruling that Johnson's testimony about the blanket was admissible circumstantial evidence in the case.

The blanket itself had already been admitted into evidence, and there was testimony that the blanket was found by police with the shovel used to bury Alzner. Both were in the trunk of the car Holt had driven on the night in question and Holt's wife, who owned the car, said she had never seen the blanket before. Johnson's testimony that the blanket tested positive for acid phosphatase raised the implication that the stain was a semen stain and recently made.

This evidence was probative on the question of whether Holt had sexual contact with Alzner and its probative value was not outweighed by the danger of unfair prejudice or confusion of the jury. As the trial court correctly ruled, the absence of fiber evidence connecting the blanket to Alzner and the apparent failure by Johnson to attempt to determine whether the semen on the blanket came from Holt were matters properly addressed on cross-examination.

Holt claims the suggestion that the semen was deposited on the blanket during the assault was "false." This claim alone cannot lead us to conclude, as he urges, that the testimony would thereby tend to confuse the jury. Neither do we deem as significant Holt's concern that testimony about a semen-stained blanket which was unfamiliar to Holt's wife was highly prejudicial because it suggested that Holt customarily and spontaneously engaged in extra-marital intercourse. The testimony was properly admitted.

Holt also claims the court erred in requiring that both Dr. Gale and the prosecution be shown a letter written by Dr. Ronald Baron, a psychiatrist who had been retained by Holt's Illinois counsel to assist in his defense but who was not eventually used as a defense witness. After the letter was disclosed to the prosecution, the court allowed the state to call Dr. Baron as a rebuttal witness. Holt argues that these rulings violated the attorney-client privilege and his constitutional right to counsel.

Because the letter and rebuttal testimony were relevant only to the issue of Holt's intoxication defense, any error in their admission was harmless since we have held there to have been no basis in the evidence

for instructions on either an intoxication defense or second-degree murder. We, therefore, do not reach the merits of Holt's claim on this issue.

Holt similarly claims that it was error in light of sec. 971.18, Stats., to admit rebuttal testimony from the psychiatrist, Dr. Frederick Fosdal, who was appointed by the court to examine Holt in connection with his original, subsequently withdrawn, plea of not guilty by reason of mental disease or defect. Again, because this rebuttal testimony was relevant only to the issue of Holt's intoxication defense, any error in admitting it was harmless.

*Improper Prosecutorial Comment*

The penultimate question on appeal is whether Holt was denied a fair trial by a comment of the prosecutor during closing argument. Shortly after District Attorney Zapf began his closing argument, the following exchange occurred:

MR. ZAPF: If you stop and think about it for a moment, I shouldn't have to stand before you at this point. I shouldn't have to say anything. Maybe the case is over. The evidence is in. That presumption of innocence that attended the defendant throughout the trial, when does that go away? It goes away when the evidence is closed.

MR. EGRE: Objection. Not an accurate statement of the law. The presumption of innocence attends Mr. Holt up to and including the time the jury begins deliberations.

THE COURT: I think that is a fair statement. That is what I'll be instructing them.

It is well-established that in order to preserve for appeal an objection to an allegedly improper prosecutorial comment during closing argument, a defendant must move for a mistrial upon those grounds. *Haskins v. State,* 97 Wis.2d 408, 424, 294 N.W.2d 25, 36 (1980). Defense counsel made no such motion here. The objection is therefore waived. We note, however, that the misstatement concerning the presumption of innocence was cured by the trial court's approval of defense counsel's immediate correct statement of the law and by proper jury instructions on the issue.

*Sentence Credit*

Finally, Holt seeks credit against his Wisconsin sentences for time spent in custody in Illinois for the same course of conduct. The trial court denied such credit. The state concedes that this denial was erroneous. *See* sec. 973.155, Stats.; *State v. Gilbert,* 115 Wis.2d 371, 380, 340 N.W.2d 511, 516 (1983). We remand the case to the circuit court with directions to amend the sentences to reflect the credit to which Holt is entitled.

*By the Court.*—Judgment affirmed and cause remanded with directions.