State of Wisconsin, Plaintiff-Respondent,
v.
Durinda A. Kuczor, Defendant-Appellant.
No. 2009AP1077-CR.
Court of Appeals of of Wisconsin, District II.
Opinion Filed: September 30, 2009.
¶ 1 BROWN, C.J.[1]
Durinda A. Kuczor pled no contest to operating while intoxicatedthird offense. She appeals the denial of her suppression motion contesting the officer's justification for opening her zipped duffel bag. Until that bag was opened, the arresting officer had no inkling that Kuzcor was intoxicated. But the contents of the bag included opened bottles of vodka, and those bottles set in motion the subsequent investigation leading to the operating while intoxicated arrest. Despite her claim that the community caretaker exception was not raised by the State as the reason for the police investigation, this court's review of the transcript satisfies us that the community caretaker exception was in play. However, that exception did not provide the deputy with justification to fish for information by searching the contents of the bag. This court is constrained to reverse.
¶ 2 A Fond du Lac county sheriff's deputy responded to a dispatch that that there was an accident on Highway 41 southbound. The deputy proceeded to that location, which was a construction zone. The deputy observed a vehicle that had obviously been involved in a crash and was up against a cement barrier, blocking traffic. It appeared that the vehicle had rolled over in the process. The deputy noticed that the operator of the vehicle, later identified as Kuczor, "definitely [had] a strange environment around her. She wasI don't want to say shook up. I would describe it more like as if she was in shock as to what had just happened to her and it appeared that she was not acting normally."
¶ 3 The deputy asked Kuczor for her driver's license. She "acted confused somewhat." She responded that she did not believe she had her driver's license with her. At about this time, the deputy noticed that her "pretty good sized duffel bag," which was alongside her and unzipped when the deputy had noticed it earlier, was now zipped. The deputy again remarked that, during this discussion about her driver's license, Kuczor
was acting quite strange. I was really concerned about her, whether she was hurt or not and, again, was questioning her about if she was okay and if she needed medical attention. And I explained to her that I didn't think that she was acting right, as far as somebody that would normally just be involved in an accident, and she made some kind of unique comment to the fact that how would you feel if you rolled your vehicle.
¶ 4 The deputy asked if she was on any medications and she replied in the affirmative, but denied that the medication would have factored into the accident. The deputy was obviously still concerned about her possible medical condition because he then asked whether she had any other medical conditions that could have some relevance to the accident, such as whether she was a diabetic. But Kuczor again denied that she had any medical condition that would have caused the accident. The deputy was not convinced and, in his testimony, thought that "to be quite honest ... [I] was thinking that I should have had an ambulance summoned because her conditions and signs, to me, were that she was not acting normal."
¶ 5 The tow truck came and Kuczor was removed from the vehicle to go inside the tow truck. She then left the tow truck to retrieve her duffel bag. But the deputy decided to search the bag first. His explanation for doing so was stated in his testimony as follows:
I really felt that there was some other circumstances as to why she was acting the way she was and, [to] be quite honest with you, felt that there was more of a medical condition than anything else and was suspecting that I would get that confirmed by the duffel bag.
¶ 6 But what the deputy found instead led to something else. There were, in fact, some medications in the duffel bag, but there were also two opened vodka bottles. At that point in time, the tow truck operator walked over to the deputy and indicated that he felt the woman was not acting normal and that there were "some other circumstances with her condition." The tow truck operator noticed that the woman had exited the tow truck as soon as she saw the deputy going into her vehicle.
¶ 7 Now, the deputy believed that alcohol might be a factor even though the usual markers such as slurred speech or alcohol scent were not present. One thing led to another. The deputy, along with back-up, transported her to a safer place and then conducted field sobriety tests. Eventually, she was arrested for operating while intoxicated. A complaint charged her with, inter alia, operating while intoxicatedthird offense. She brought and lost her suppression motion, pled no contest, and appealed.
¶ 8 Kuczor's contention is simply that the deputy had no justification to search her duffel bag. Up until that time, there was no hint of her having been intoxicated. Kuczor notes that the deputy saw no staggering, smelled no alcohol and heard no slurring. The deputy even admitted that, up until the search, there was no suspicion that intoxication was involved. Kuczor appears to argue that since there was no probable cause to believe that Kuczor was committing a crime, or that she was even suspected of having done so, the search of the zipped bag was an intrusion upon her constitutional expectation of privacy.
¶ 9 Moreover, anticipating that the State might try to justify the search on some exception to the warrant requirement, Kuczor asserts that the State offered no such argument either during the motion hearing or in arguments before the court afterwards. Kuczor therefore contends that any such argument now raised should be held waived.
¶ 10 Sure enough, in its responsive brief, the State argues that the community caretaker exception should apply and that this justified the search of the bag. In her reply brief, Kuczor contends that the community caretaker exception was never submitted as the justification for the search until the responsive brief and again asserts that waiver should apply.
¶ 11 So, the first question we need to resolve is whether the State raised the community caretaker exception for the first time on appeal and, if so, whether this court should apply waiver. We answer in reverse order. In State v. Holt, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985), we concluded that the waiver rule should not apply to arguments made by a respondent seeking to uphold the result reached at trial. This is because we can affirm a trial court's result on our own reasoning and it is inconsequential whether the ground for upholding the decision is presented by the respondent rather than the court considering the issue sua sponte. Id. Holt has withstood the test of time and is still good law, although we are reluctant to apply Holt where the State's actions prevented a complete fact-finding on an issue that the trial court could have resolved. State v. Nichelson, 220 Wis. 2d 214, 229-30, 582 N.W.2d 460 (Ct. App. 1998). So, unless the events occurring at the trial court prevented the development of a full factual basis for review, the appellate courts in this state use Holt.
¶ 12 And when we look at the record developed in the trial court, we find that, while the State did not use the magic words "community caretaker exception" in presenting its testimony and making its argument, the State's case was all about the community caretaker exception. At several places in the deputy's testimony, which we reported in the fact portion of this opinion, the deputy spoke of his concern that Kuczor was acting out of the ordinary, not in comparison to just any normal person, but in comparison to a person involved in a similar accident. He was concerned that there was a medical issue going on for which she needed help and he was trying to get appropriate information so that he could help her.
¶ 13 This is what the community caretaker function is. As our United States Supreme Court observed in Cady v. Dombrowski, 413 U.S. 433, 441 (1973): "Local police officers ... frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." The deputy in this case testified that he was worried about her medical condition and determined to find out more information regarding that condition so that he might be able to better help her. He was not conducting a criminal investigation when he opened the duffel bag. And that is the only inference that can be sensibly taken from his testimony. So, because the record was fully made regarding the community caretaker exception, we will consider the issue even if, as we already said, no magic words to that extent were employed either by the prosecutor or the trial court at the hearing.
¶ 14 Under both the United States and Wisconsin Constitutions, a warrantless search is per se unreasonable, and evidence derived from it will be suppressed, subject to certain exceptions. State v. Williams, 2002 WI 94, ¶18, 255 Wis. 2d 1, 646 N.W.2d 834. The community caretaker exception is one of them. Under the emergency doctrine, an officer may enter an area in which a person has a privacy interest if there are reasonable grounds to believe that an emergency exists. State v. Boggess, 115 Wis. 2d 443, 450, 340 N.W.2d 516 (1983). For a search to fall under this exception, there must exist "specific facts that, taken with the rational inferences from those facts, reasonably [warrant] the intrusion." Id. at 451. We apply an objective test to make this determination. State v. Richter, 2000 WI 58, ¶30, 235 Wis. 2d 524, 612 N.W.2d 29.
¶ 15 Here, the operator of a vehicle had just been involved in a one-car collision with a concrete barrier. She was acting so strangely that it was out of the ordinary, even for a person involved in a similar accident. The deputy was motivated by a perceived need to render aid or assistance and this is borne out by the facts. The deputy obviously did not want the operator to be going off in a tow truck if there were medical issues that needed attending. Therefore, we conclude that the deputy was engaged in a bonafide community caretaker function at the scene.
¶ 16 So up to this point, we are with the State. But then it all falls apart when we ask whether opening the zipped duffel bag was part of the reasonable exercise of the deputy's bonafide community caretaker function. We can arrive at only one answer. There are simply no specific facts that would justify a reasonable police officer in the position of this deputy to open the zipped bag based only on Kuzcor's strange behavior, which was strange even for a person who had been involved in the kind of accident which occurred. There is nothing that would warrant a law enforcement officer to enter the area in which there is a privacy interestin this case, the zipped duffel bag. In sum, we have trouble with the idea that a law enforcement officer's concern about whether a driver might have a serious medical condition justifies that officer to zero in on a zipped duffel bag when the officer has expressed no idea of what he is looking for.
¶ 17 The State surmises that it was entirely reasonable for a prudent officer to see if the bag contained medications or other medical equipment or apparatus indicating a pre-existing medical condition, or "possibly some printed material in a wallet or something indicating such a medical condition." The State argues: "Had the defendant suddenly gone into a seizure or rapidly deteriorated in some other way, the officer would have been faulted for not further investigating the cause of the strange condition of this person who had just been in a serious accident but had only superficial outward injuries."
¶ 18 But we are persuaded by Kuczor's reply, which states in pertinent part:
The community caretaker doctrine has never included the idea that medical care can be forced onto a person. One can only imagine the plan the Deputy could follow. Was he going to find some medicines in the duffel bag which Ms. Kuczor was unaware of? Was he going to force her to take them? Would this medicine cure her of the vague medical condition of "strangeness" which was the only symptom that was ever described? There is no evidence the Deputy would have been qualified to administer drugs he finds in a duffel bag to a person who plainly did not want it.
If the officer was going to help Ms. Kuczor medically, he could call an ambulance. Even then, he could not force her to get in it. What the State is asserting plainly goes beyond a legitimate community care taking function.
¶ 19 We agree with Kuczor. Getting into that bag may have satisfied the deputy's curiosity about whether there was any information of a medical nature in the bag, but to what purpose? To what end result? Law enforcement cannot, willy-nilly, invade the privacy interests of citizens. And, when a citizen zips a bag, there is a privacy interest. If there is some specific fact that justifies law enforcement to invade that interest, then law enforcement can get a warrant. If there is some emergency present that justifies the invasion without a warrant, the law enforcement officer must know some facts about that particular privacy zone meriting invasion so as to end the emergency. Here, the deputy had no particular facts about that zipped bag which would warrant intrusion. He was just fishing for information. And the community caretaker function, no matter how altruistic, cannot be used as a justification to fish.
¶ 20 We conclude that, without the evidence from the bag, there never would have been a field sobriety test and there never would have been evidence supporting the arrest for operating while intoxicated. We have no alternative here but to reverse.[2]
By the Court.Judgment reversed.
This opinion will not be published in the official reports. See WIS. STAT RULE 809.23(1)(b)4.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 753.31(2)(f) (2007-08). All references to the Wisconsin Statutes are to the 2007-08 version unless otherwise noted.
[2] The trial court basically held that, since Kuczor was in a serious accident, seemed not to be mentally alert, was not responsive to the question of whether she had a driver's license and had zipped up her bag when it was unzipped before, she had something to hide, that there was "something afoot here" justifying a search of the bag. The problem with this reasoning is that there was no evidence, up to this point, that she had committed a crime. So, there was no probable cause to search the bag, nor was there justification to suspect that she had committed a crime. Such reasoning fails. We note that the State did not attempt to defend the trial court's rationale, but relied solely on the community caretaker theory.