COURT OF APPEALS
DECISION
DATED AND FILED

June 21, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP42-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF398

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

EARL J. OVERTON,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Kenosha County: JASON A. ROSSELL, Judge. *Affirmed.*

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Earl J. Overton appeals from a judgment entered after he pled guilty to being a felon in possession of a firearm and maintaining a drug trafficking place.  Overton claims the police violated the Fourth Amendment[1] when they entered his home without a warrant; therefore, he says, the circuit court should have granted his suppression motion.[2]  The circuit court denied the motion on the basis that the warrantless entry was justified under the community caretaker exception.  After the circuit court's ruling, however, the United States Supreme Court released its decision in *Caniglia v. Strom*, 141 S. Ct. 1596 (2021), wherein the Court held that the community caretaker exception does not "justif[y] warrantless searches and seizures in the home."  *Id.* at 1598-1600.  The State contends that the circuit court's suppression decision should be affirmed because another exception—the emergency aid exception—justified the warrantless entry into Overton's home.

¶2     Overton argues that the search of his home was not justified under the community caretaker exception, that the State forfeited its right to assert that the emergency aid exception justified the police search of his home, and that even if we allow the State's emergency aid argument, there was no emergency under the facts of this case.  The Supreme Court released *Caniglia* after Overton filed his first brief with this court but before the State filed its Response brief.  The State's brief shifted its argument from the community caretaker exception to the emergency aid exception.  We granted Overton's request to double the length of his Reply brief, so he could adequately respond to the State's changed argument.

---

[1] U.S. CONST. amend. IV.

[2] The Honorable David M. Bastianelli handled the suppression motion and entered the order denying suppression.  The Honorable Jason A. Rossell entered the judgment of conviction.

¶3    We conclude that the State has shown that the emergency aid exception applies. Because the totality of the circumstances show that the police had an objectively reasonable belief that the woman who placed the 911 call was still inside Overton's home and that her safety was endangered, the warrantless entry was justified under the emergency aid doctrine. We affirm.[3]

## I. BACKGROUND

¶4    Police received a 911 call that reported a potential domestic violence incident. The female caller reported that her boyfriend, Russell Bowens, had battered her and thrown her down the stairs.[4]  She gave police the address for where Overton, Bowens, a third man, and Bowens's young son were located. She said that the people inside that address had multiple assault rifles. While on the phone with dispatch, the woman said she was now in a car outside the residence. But, police at the scene did not see a woman in a car. When the police had

---

[3] An appellate court may affirm the circuit court's decision "for a reason different than that given by the circuit court." **State v. Ware**, 2021 WI App 83, ¶2, 400 Wis. 2d 118, 968 N.W.2d 752, *review denied* (WI Mar. 16, 2022) (No. 2020AP1559-CR). We reject Overton's argument that the State forfeited its right to argue the emergency aid doctrine. "[T]he forfeiture rule is one of judicial administration[.]" **Townsend v. Massey**, 2011 WI App 160, ¶23, 338 Wis. 2d 114, 808 N.W.2d 155. Thus, we generally allow a respondent to argue alternative grounds for affirmance. *See* **State v. Holt**, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985), *superseded by statute on other grounds*, WIS. STAT. § 940.225(7). Although Overton requests that we remand the matter back to the circuit court to afford it "the opportunity [to] analyze the matter under the emergency aid doctrine[,]" we choose to address the emergency aid exception. Both parties had the opportunity to brief it, this court is fully capable of analyzing the issue, and a remand would further delay finality.

[4] The officer who testified at the suppression hearing said "[d]ispatch advised us that a female had called in stating that she was thrown down a flight of -- or seven flights of stairs, she was battered and that the suspects or people inside had multiple assault rifles." On cross-examination, the officer confirmed the woman said "seven flights of stairs." The circuit court found that "[w]hether the person said several flights of stairs or flights of stairs" was not "determinative[.]" We agree.

dispatch convey this to the woman, she responded that a police officer had arrived on the scene, and she was talking to him. The woman then ended the 911 call. When police had dispatch repeatedly attempt to call the woman back, their calls went straight to voicemail.

¶5     Given the officers' experience with domestic violence, they were suspicious that the batterer pressured the woman to lie to the police so that the police would stop any further investigation. They were concerned that the woman was inside the residence. The address given to police was a duplex. The downstairs unit was dark, and the upstairs unit had lights on, and the police could see several people inside. The door from the porch to the upper unit was wide open. Two of the responding officers went up to the second story unit and knocked on the door. At no time did the officers hear anyone call for help or hear a female's voice coming from the apartment. Without opening the door, a male voice from inside the unit asked, "What do you want?" The officers identified themselves and asked the occupant to open the door. There was silence for a few minutes until the officers knocked a second time and told the occupant to open the door. Overton then opened the door. Besides Overton, the officers saw a second man in the living room and asked if there was anyone else in the apartment. Overton told the officer "his friend [Bowens] was inside the apartment and his son, [Bowens's] son." Overton called for Bowens to come out, and a third man approached the living room. The officers asked the men to lift their shirts to check for weapons.

¶6     Police wanted "to ensure that this female [the 911 caller] and nobody else was inside this residence[,]" so they called for additional officers "to clear the residence from -- make sure this female wasn't in [there] and needed assistance." The police then checked the residence for any other people. The police found a

child sleeping in one of the bedrooms, but the 911 caller was not there. When the officers conducted the protective sweep, they saw, in plain view, a gun, a bullet or shell casing, and drug paraphernalia.

¶7    The police then obtained a search warrant, and Overton was ultimately charged with being a felon in possession of a firearm, possession of THC and drug paraphernalia, maintaining a drug trafficking place, and child neglect.

¶8    Overton filed a suppression motion claiming that the warrantless entry into his residence violated the Fourth Amendment. After the suppression hearing, the circuit court denied the motion on the ground that the entry was lawful under the community caretaker exception to the Fourth Amendment. Though the circuit court's ruling was based on an exception that *Caniglia* held is no longer available, the court made findings and conclusions that are still applicable for our review. The circuit court said: (1) "the officer articulated an objectively reasonable basis under the totality of the circumstances" to enter Overton's residence; (2) "[t]he residence upstairs has activity and lights, the one downstairs doesn't"; and (3) "[t]here's no question that it's objectively reasonable that the person who made the call of the battery could still be in that residence with all likelihood."[5]

---

[5] The circuit court also referred to "the subjective intent of the officer" in regard to finding that the entry and sweep of Overton's apartment "was not related to law enforcement activities in and of itself." The officer's subjective intent is a factor the court may consider specific to the community caretaker exception. Because the community caretaker exception is not the basis for our decision, we will not look at subjective intent but will consider the totality of the circumstances solely under an objective lens.

¶9      After the circuit court denied his suppression motion, Overton accepted a plea bargain, pled guilty, and was sentenced to five years' initial confinement and five years' extended supervision on the firearm possession count and one and one-half years' initial confinement and two years' extended supervision on the drug place count, consecutive.  The sentencing court imposed and stayed the sentence and placed Overton on four years' probation.  Overton appeals.

## II.  DISCUSSION

¶10      "[A]n order granting or denying a motion to suppress evidence [presents] a question of constitutional fact, which requires a two-step analysis" on appellate review.  *State v. Asboth*, 2017 WI 76, ¶10, 376 Wis. 2d 644, 898 N.W.2d 541.  "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous.  Second, we independently apply constitutional principles to those facts."  *State v. Robinson*, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463 (citations omitted).

¶11      The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that "no Warrants shall issue, but upon probable cause[.]"  U.S. CONST. amend. IV.  Article I, section 11 of the Wisconsin Constitution likewise provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated" and that "no warrant shall issue but upon probable cause[.]"  WIS. CONST. art. I, § 11.

¶12 "A [search or] seizure conducted without a valid warrant is presumptively unreasonable." *State v. Brereton*, 2013 WI 17, ¶24, 345 Wis. 2d 563, 826 N.W.2d 369. The "ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Whether a search is exempt from the warrant requirement involves balancing "the degree to which it intrudes upon an individual's privacy and … the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).

¶13 In balancing these interests, courts have concluded that warrantless searches may comport with the Fourth Amendment if a search falls within a recognized exception. *See, e.g.*, *Kentucky v. King*, 563 U.S. 452, 459 (2011). The exception involved in this appeal is the emergency aid exception, which has been recognized by both the United States Supreme Court, *see Caniglia*, 141 S. Ct. at 1599, and the Wisconsin Supreme Court, *see State v. Boggess*, 115 Wis. 2d 443, 449-50, 340 N.W.2d 516 (1983). "This exception states that the Fourth Amendment does not bar a government official from making a warrantless intrusion 'when the official reasonably believes that a person is in need of immediate aid or assistance.'" *State v. Ware*, 2021 WI App 83, ¶20, 400 Wis. 2d 118, 968 N.W.2d 752 (citations omitted), *review denied* (WI Mar. 16, 2022) (No. 2020AP1559-CR); *see also Lange v. California*, 141 S. Ct. 2011, 2017 (2021) (recognizing the exigency associated with an officer's need to "'enter a home without a warrant to render emergency assistance to an injured occupant[,] to protect an occupant from imminent injury,' or to ensure his own safety" (alteration in original; citation omitted)).

¶14 To determine whether the emergency aid exception justified entry, we apply a two-part objective test, viewed under the totality of the circumstances.

First, we review whether a reasonable person would have believed that "there was an immediate need to provide aid or assistance to a person due to actual or threatened physical injury[.]" **Ware**, 400 Wis. 2d 118, ¶22 (citations omitted). Second, we determine whether a reasonable person would have believed "that immediate entry into an area" subject to the Fourth Amendment "was necessary in order to provide that aid or assistance." **Id.** (citations omitted). The burden is on the State to demonstrate that this exception applies. **Id.**, ¶19.

¶15   Here, we conclude that the State met its burden to show that under the totality of the circumstances, both parts of the emergency aid test were satisfied. Again, the first part asks whether a reasonable person would see "an immediate need to provide aid or assistance to a person due to actual or threatened physical injury[.]" **Id.**, ¶22. To assess whether objective reasonableness exists, we require an officer "to point to specific facts that, taken with the rational inferences from those facts, reasonably warranted the intrusion into an area in which a person has a reasonable expectation of privacy." **Boggess**, 115 Wis. 2d at 451. The test turns on "the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences." **Id.** (citations omitted).

¶16   The 911 caller reported that she was battered by her boyfriend and thrown down the stairs. She asked for help, gave an address, and told dispatch the people in the residence had multiple assault rifles. This information is more than sufficient to satisfy the first part of the emergency aid test. Particularly in a domestic violence incident, this information gave officers an objectively reasonable belief that the 911 caller needed immediate aid or assistance.

¶17    The second part of the emergency aid test requires that a reasonable person would have believed "that immediate entry into an area," protected by the Fourth Amendment was necessary to render the emergency aid or assistance. Certainly, Overton's residence is an area protected by the Fourth Amendment. *Ware*, 400 Wis. 2d 118, ¶22 (citations omitted). The question is whether, based on the facts here, a reasonable person would believe the officers needed to *immediately* enter Overton's apartment. Based on the facts the officers had at the time, we conclude that a reasonable person would have believed that the officers needed to immediately enter the apartment to render aid to the 911 caller.

¶18    The officer here pointed to a number of facts from which it was objectively reasonable to believe the woman was in Overton's residence. The woman called 911, reported being battered by her boyfriend, and gave the address of a residence that had an upper and lower unit. When police arrived, they got information about where the woman was that did not match what they saw on the ground. The woman said she was in a car outside the residence, but the police saw no car. When dispatch told the woman police were there but did not see her, the woman assured dispatch that she was talking to a police officer at the residence. When police tried to get more information from the woman, she hung up and would not answer her phone despite repeated attempts to call her back. In domestic violence calls, it is not uncommon to have a victim call for help and then when police respond, claim that everything is fine. At the suppression hearing, the officer testified that the fact that *what* the caller was saying about her location did not pan out raised his suspicions that *she might be trapped inside* since there was no other sensible explanation for why she would lie that she was outside or talking to police. Based on all of this information and the reasonable inferences derived therefrom, it was objectively reasonable for police to believe the woman was

9

inside Overton's residence, that her safety was threatened, and that "delay in procuring a warrant would gravely endanger" her life. *See **State v. Richter***, 2000 WI 58, ¶30, 235 Wis. 2d 524, 612 N.W.2d 29 (citation omitted). It was objectively reasonable for the officers to believe her batterer may have discovered she called 911 and was threatening her with a gun to force her to convince the police to go away. It was reasonable to believe that immediate entry was needed to provide aid or assistance.

¶19 The fact that we know *after the fact* that the 911 caller was *not* in Overton's apartment does not erase the objectively reasonable belief that existed at the time. When an officer is faced with two competing reasonable inferences— one reasonable inference that justifies a warrantless search and the other that does not—the officer is entitled to rely on the reasonable inference that justifies the warrantless emergency search. *See **State v. Mielke***, 2002 WI App 251, ¶8, 257 Wis. 2d 876, 653 N.W.2d 316. We conclude the second part of the emergency aid test was satisfied. Accordingly, the State has proven the police entry into Overton's residence was justified based on the emergency aid doctrine, and therefore, there was no Fourth Amendment violation.

¶20 Overton argues that applying the emergency aid exception under the facts here will "swallow[] the rule." He says the facts did not warrant application of the emergency aid exception. He cites three cases he alleges involved true emergencies: ***State v. Kraimer***, 99 Wis. 2d 306, 298 N.W.2d 568 (1980), ***Boggess***, 115 Wis. 2d 443, and ***State v. Pires***, 55 Wis. 2d 597, 201 N.W.2d 153 (1972). ***Kraimer*** involved anonymous calls to the police from a man who said he had killed his wife days before and was in his home with his four young children. ***Kraimer***, 99 Wis. 2d at 308. ***Boggess*** involved an anonymous tip that children living in Boggess's home "may have been battered and were in need of medical

attention." ***Boggess***, 115 Wis. 2d at 446. ***Pires*** involved a call to police after a man came home from work and reported "his baby was dead and his wife was having a nervous breakdown." ***Pires***, 55 Wis. 2d at 600.

¶21 Although reviewing the facts of other cases that have applied the emergency aid exception can be helpful, it is not dispositive because emergency aid cases are decided on a case-by-case basis. *See* ***Lange***, 141 S. Ct. at 2018. We disagree with Overton's contention that upholding the police entry into his residence under the emergency aid exception will "swallow[]" the Fourth Amendment. We have examined the facts and determined that both parts of the emergency aid objective test were met. The police had information to believe that a woman's life was in danger, and it was reasonable to believe that she was in Overton's apartment. "[T]he preservation of human life is paramount to the right of privacy protected by the fourth amendment." ***Ware***, 400 Wis. 2d 118, ¶20 (citation omitted).[6]

### III. CONCLUSION

¶22 This case presented an unusual scenario where the lawful exception that the circuit court based its decision on became unlawful during the appeal.

---

[6] The State alternatively asserts that this case could be affirmed on the basis that the police acted in good faith reliance on the community caretaker law that existed at the time this incident occurred, and therefore the exclusionary rule should not be applied. *See* ***State v. Burch***, 2021 WI 68, ¶¶16-17, 398 Wis. 2d 1, 961 N.W.2d 314 (explaining the exclusionary rule will not be applied when "police act with an objectively reasonable good-faith belief that their conduct is lawful" as the rule's "sole purpose" "is to deter future Fourth Amendment violations" (citations omitted)). Overton disagrees because he believes "the community caretaker exception never justified the search and entry." Because we have decided this appeal on the emergency aid exception, it is not necessary for us to address this additional argument. *See* ***State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

The United States Supreme Court decided that the community caretaker exception to the Fourth Amendment does not "permit warrantless entry into the home." *Caniglia*, 141 S. Ct. at 1600 (citation omitted). However, both the State and Overton had the opportunity to submit briefs post-*Caniglia*, and as a result, we were able to address their arguments, despite the change in the law.

¶23    It is a longstanding principle that this court may affirm the circuit court on different grounds. *See Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 595, 530 N.W.2d 16 (Ct. App. 1995). We have done so here. We conclude that the circuit court's decision to deny Overton's suppression motion was ultimately correct, although it cannot be sustained based upon the community caretaker exception. Instead, we hold that the suppression motion was properly denied because entry into Overton's residence was justified under the emergency aid doctrine. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.