STATE of Wisconsin, Plaintiff-Respondent,

v.

Vincent SIMPSON, Defendant-Appellant.†

Court of Appeals

*No. 95–1129–CR. Submitted on briefs February 6, 1996.—Decided March 12, 1996.*

(Also reported in 548 N.W.2d 105.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Paul Allen Strouse* of *Strouse Law Offices* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general and *Thomas J. Balistreri*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J.   Vincent Simpson appeals from a judgment, entered upon his no contest plea, to one count of first-degree sexual assault, contrary to § 940.225(1)(b), STATS. Simpson claims the trial court

erred in denying his motion to withdraw his plea and that it was a violation of his attorney-client privilege to allow his attorneys to testify at the motion hearing. Because the trial court did not err in denying Simpson's motion to withdraw his plea and because his attorneys were properly allowed to testify based on Simpson's waiver of the attorney-client privilege, we affirm.

## I. BACKGROUND

Simpson was charged in a criminal complaint with one count of first-degree sexual assault, one count of burglary, and habitual criminality. Trial was scheduled for May 11, 1994. On that date, the State offered to dismiss the burglary and habitual criminality counts if Simpson would plead to the sexual assault count. Simpson agreed. However, when the trial court attempted to engage Simpson in a proper plea colloquy, Simpson, on occasion, appeared equivocal.[1] A brief recess was taken to allow Simpson's attorneys to further explain the proceedings. After the recess, Simpson's lawyer explained that Simpson's equivocation was caused by his mother, who was present in the courtroom, making negative motions to him. Simpson's lawyer explained that they had now discussed the

---

[1] Simpson's equivocations were limited: During the plea hearing, when asked whether he understood the guilty plea questionnaire and waiver of rights form, he responded "[s]omewhat." When asked whether he understood that in pleading, he was giving up his presumption of innocence, he responded, "[n]o." When asked whether he understood that if he went to trial and was found guilty on all three of the charged counts, he would face a maximum of 46 years in prison, but that by pleading, he is facing only 20 years in prison, he responded, "[n]o, I don't."

value of the plea bargain with the family and that Simpson now was willing to proceed with the plea. Afterwards, the trial court executed the plea colloquy without incident.

Approximately three weeks later, Simpson moved to withdraw his no contest plea. Simpson argued that he was forced to plead without knowing about a crime laboratory report's exculpatory evidence, that he received ineffective assistance of counsel, and that his attorneys conspired with the prosecutor to prevent his alibi witness from coming to trial. The trial court held a motion hearing and took testimony from Simpson, from Simpson's two former attorneys: Bernard Goldstein and Robert A. Kagen, and from the prosecutor. Shortly after the hearing, and before sentencing, the trial court denied Simpson's motion to withdraw his plea. Judgment was entered. Simpson now appeals.

## II. DISCUSSION

*A. Plea Withdrawal.*

Simpson claims he has shown justification for withdrawing his plea and the trial court erred in denying his motion. The trial court determined that Simpson failed to show a fair and just reason for withdrawing his plea.

■

The standard for granting a motion to withdraw a plea that occurs before sentencing requires the defendant to show a fair and just reason. *State v. Shanks*, 152 Wis. 2d 284, 288, 448 N.W.2d 264, 266 (Ct. App. 1989). Whether a defendant meets this burden is a decision that lies within the trial court's discretion. *Id.* We will sustain the trial court's ruling denying Simpson's motion to withdraw his guilty plea as long as the

trial court did not erroneously exercise its discretion. *See State v. Canedy,* 161 Wis. 2d 565, 579, 469 N.W.2d 163, 169 (1991). The trial court's ruling constitutes a proper exercise of discretion if the decision was based on the relevant facts, as applied to the appropriate law, and resulted in a reasoned and reasonable determination. *Id.* at 579-80, 469 N.W.2d 169. We conclude that the trial court in the instant case did not erroneously exercise its discretion.

First, the trial court found that Simpson was manipulative, incredulous and that he had lied. This finding was based on Simpson's allegation that his attorneys had failed to provide him with an exculpatory lab report prior to the time Simpson entered his plea. Simpson's attorney's testimony from the motion hearing indicated otherwise, i.e., that the lab report was actually discussed with Simpson before the decision was made to plead no contest. After hearing both versions, the trial court believed the attorney. This credibility determination is more appropriately left to the trial court. *State v. Owens,* 148 Wis. 2d 922, 930-31, 436 N.W.2d 869, 872-73 (1989). We will not disturb it. Accordingly, Simpson's claim that he was not provided with relevant information, i.e. the lab report, does not constitute a fair and just reason requiring plea withdrawal.

Second, although Simpson originally alleged ineffective assistance, his new attorney eschewed that approach, instead arguing that Simpson was confused and did not understand the consequences of his plea. The trial court rejected both claims, indicating that although Simpson attempted to inject confusion into his verbal answers, it was clear that Simpson knew what he was doing. We cannot say that the trial court's findings in this regard are in error. Further, Simpson's

"confusion" was limited to the initial plea colloquy. After the brief recess, Simpson did not show any confusion or misunderstanding in his responses to the trial court's questions. Hence, we must agree with the trial court that Simpson's claims of confusion and misunderstanding are not credible and, therefore, do not constitute a fair and just reason to withdraw his plea.

Finally, Simpson also claims the trial court scared him or coerced him into taking the plea. Our review of the record belies this claim. The trial court informed Simpson of the facts. There is no evidence of coercion on the part of the trial court. Therefore, we reject this contention.

## B. Attorney-Client Privilege.

Simpson also argues that it was a breach of his attorney-client privilege to take testimony from his former attorneys, Goldstein and Kagen, at the motion hearing. The trial court determined that Simpson waived this privilege by alleging that his attorneys did not adequately perform their duties. We agree.

Simpson's new attorney argued that Simpson was not really making an ineffective assistance claim and, therefore, he had not waived his attorney-client privilege. We are not persuaded by this argument.

Section 905.03(2), STATS., provides that a person who obtains professional legal services from an attorney has a privilege to prevent the attorney from disclosing confidential communications made for the purpose of rendering those services. There is an exception to this privilege, however, when the communications are "relevant to an issue of breach of duty by the lawyer to the lawyer's client." Section 905.03(4)(c). It is beyond dispute that the privilege dis-

appears when the client sues his former lawyer for malpractice, *Dyson v. Hempe*, 140 Wis. 2d 792, 810-11, 413 N.W.2d 379, 387 (Ct. App. 1987), or seeks to reverse a criminal conviction on the grounds that counsel rendered ineffective assistance. *State v. Flores*, 170 Wis. 2d 272, 277-78, 488 N.W.2d 116, 118 (Ct. App. 1992). We conclude, however, that the exception is not limited to these direct attacks on an attorney's performance, but may also apply in seemingly less direct situations.

The instant case is a prime example of a situation where a former attorney's professional performance is being attacked without directly alleging ineffective assistance. It would be fundamentally unfair to allow Simpson's attack on Goldstein and Kagen, without also allowing Goldstein and Kagen to testify in response to Simpson's allegations, simply because Simpson's new attorney avoided using the magic words, "ineffective assistance." Simpson's motion to withdraw his plea on the grounds that it was not knowingly, voluntarily and intelligently made, necessarily draws into question the performance of his attorneys' duty to provide proper advice about the nature and consequences of the plea. In so doing, Simpson should not be allowed to hide behind the attorney-client privilege to prevent the State from calling his former attorneys to testify regarding communications relevant to the entry of the plea. *See, e.g., Johnson v. United States*, 542 F.2d 941, 942 (5th Cir. 1976) (defendant claimed he was not informed of maximum penalty for offense), *cert. denied*, 430 U.S. 934 (1977); *Fulton v. State*, 630 P.2d 1004, 1006-07 (Alaska Ct. App. 1981) (defendant claimed attorney assured him he would not go to jail, and encouraged him to enter plea, saying he could withdraw plea if he had second thoughts).

Accordingly, we conclude that Simpson waived his attorney-client privilege by alleging that his former attorneys, Goldstein and Kagen, failed to properly advise him with respect to entering his plea. Therefore, it was not a violation of the attorney-client privilege to allow his former attorneys to testify to the extent necessary to defend against these allegations.

*By the Court.*—Judgment affirmed.