STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert J. NICHELSON, Defendant-Appellant.

Court of Appeals

*No. 97–3136–CR. Submitted on briefs April 15, 1998.—Decided May 19, 1998.*

(Also reported in 582 N.W.2d 460.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul M. Moldenhauer* of *Cirilli, Gondik, Moldenhauer & Zuber*, of Superior.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general and *David J. Becker*, assistant attorney general.

Before Cane, P.J., Myse and Hoover, JJ.

MYSE, J.   Robert Nichelson appeals a judgment of conviction and an order denying his postconviction request to withdraw a no contest plea to one count of first-degree sexual assault of a child under the age of thirteen. Nichelson argues that the court erred by finding that he understood the nature and elements of the offense at the time he entered his plea. We agree and reverse the trial court because Nichelson's plea was accepted without the trial court's conformance with § 971.08, STATS.; Nichelson properly alleged that he did not know or understand the rights he was giving up at the time he entered his plea; and the State failed to establish by clear and convincing evidence that Nichelson understood that information. We also reject the State's proposed remedy to remand for a further hearing because the State waived this argument by making a strategic decision not to call Nichelson's trial attorneys as witnesses to determine what advice they gave to Nichelson regarding the elements of the offense charged. We therefore remand this matter to the trial

216

court with the direction to grant Nichelson's motion to withdraw his plea.

Nichelson was charged with one count of first-degree sexual assault of a child, contrary to § 948.02(1), STATS. At an initial court appearance, Nichelson's second attorney, James Lex, Jr., received a copy of the criminal complaint on Nichelson's behalf and waived a reading of that document.[1] At the time of arraignment, Lex waived the reading of the information as well. Thereafter a third attorney, Stephen Willett, was appointed to represent Nichelson. One month after Willett's appointment, Nichelson pled no contest and was sentenced to twenty years in prison and required to participate in a sexual offender program. Nichelson then brought postconviction motions alleging his failure to understand the nature of the charges against him and the ineffective assistance of counsel. The trial court denied the motions, and Nichelson appeals that part of the order rejecting his motion to withdraw his plea. Additional facts will be set forth later in this opinion.

■■

Nichelson argues that he should be permitted to withdraw his plea because it was not entered knowingly, voluntarily, and intelligently. The standard of review for this issue was recently described by the supreme court in *State v. Van Camp*, 213 Wis. 2d 131, 569 N.W.2d 577 (1997). "A plea of no contest that is not voluntarily, knowingly, and intelligently entered violates fundamental due process[,]" and "withdrawal of the plea is a matter of right." *Id.* at 139, 569 N.W.2d at 582. Whether a plea was voluntarily, knowingly, and intelligently entered is a question of constitutional fact,

[1] Nichelson was represented initially at his bond hearing by Melissa Hilken.

and is reviewed independently of the trial court's determination. *Id.*

Under the procedure established by the supreme court in *State v. Bangert*, 131 Wis. 2d 246, 267, 389 N.W.2d 12, 23 (1986), and restated in *Van Camp*, we employ a two-step process to determine whether a defendant voluntarily, knowingly, and intelligently entered a plea. First, we must determine whether the defendant has made a "prima facie showing that his plea was accepted without the trial court's conformance with Wis. Stat. § 971.08, or other mandatory duties imposed by [the supreme] court," and whether he has properly alleged that "he in fact did not know or understand the information . . . provided at the plea hearing." *Van Camp*, 213 Wis. 2d at 141, 569 N.W.2d at 582–83 (footnote omitted). If the defendant makes this initial showing, "the burden then shifts to the State, and we must determine whether the State has demonstrated by clear and convincing evidence that the defendant's plea was voluntarily, knowingly, and intelligently entered." *Id.* at 141, 569 N.W.2d at 583. A plea is not voluntary if the defendant did not understand the essential elements of the charged offense at the time the plea was entered. *See Bangert*, 131 Wis. 2d at 267, 389 N.W.2d at 23.

We conclude that Nichelson made his initial showing, and that the State failed to demonstrate by clear and convincing evidence that the plea was voluntarily, knowingly, and intelligently entered. We therefore reverse the trial court's denial of his motion to withdraw his plea.

There is no dispute that Nichelson adequately alleged he did not know or understand the information which should have been provided to him. Nichelson

claims that his failure to understand this information is due in part to his mental handicap.[2] We also conclude that the record demonstrates the trial court failed to conform with § 971.08, STATS., at the plea hearing. Section 971.08(1) requires the trial court to do all the following before accepting a plea of no contest:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

At the time of the plea, there was no colloquy between Nichelson and the trial court as to Nichelson's understanding of the nature of the charges against him. Rather, Willett attempted to establish Nichelson's understanding through the following testimony:

MR. WILLETT: What crime are you being charged with?

THE DEFENDANT: First degree sexual assault.

MR. WILLETT: Okay. And do you understand that I talked to you about the elements, what the

---

[2] Nichelson has been diagnosed as borderline mentally retarded, and there was testimony that he had the mental age of an eight- to ten-year-old.

District Attorney needs to prove, that–that the girl has to be under a certain age.

THE DEFENDANT: Yeah.

MR. WILLETT: And that you touched her sexually and sexual parts.

THE DEFENDANT: Yeah, that part I understand, what they said.

■ Among other potential errors, the record is insufficient to demonstrate that Nichelson understood the nature of the charge. In particular, the above colloquy does not indicate that Nichelson knew the State had to prove beyond a reasonable doubt that his purpose in sexually touching the child was his own sexual gratification. *See* § 948.01(5)(a), STATS.[3] This failure is especially important given that Nichelson's initial statements to the police indicated that his defense was based on the allegedly accidental nature of the contact.

The State concedes that the discussion between Willett and Nichelson did not include a "complete catalogue of the elements of the offense." It also appears to concede that, "examined in a vacuum, the above colloquy [between Willett and Nichelson] would not satisfy the [constitutional] requirements." The State, however, asks us to view the above statements in light of the trial court's statements at the postconviction hearing that Willett was one of "the most experienced and cautious attorneys" to appear before the court. We reject the State's argument. The trial court's general

---

[3] Although § 948.02(1), STATS., can be established by other forms of "sexual contact," e.g., sexual touching with the purpose to sexually degrade or humiliate the victim, the information alleged that Nichelson met the "sexual contact" requirement in part because the touching was for his sexual gratification.

opinion of the defense counsel does not establish that the requirements of § 971.08(1)(a), STATS., were met. Our review is instead focused on the transcript of the plea hearing and other evidence in the record that establishes what occurred at the plea hearing. *See Van Camp*, 213 Wis. 2d at 141–42, 569 N.W.2d at 583. Because neither the transcript nor the rest of the record reveals that all the essential elements were discussed with Nichelson, we conclude that § 971.08(1)(a) was not met.

Having established that Nichelson met his initial burden, the burden shifts to the State to show by clear and convincing evidence that Nichelson nonetheless entered his plea voluntarily, knowingly, and intelligently. *See Van Camp*, 213 Wis. 2d at 145, 569 N.W.2d at 584. "To meet its burden, the State may utilize any evidence which substantiates that the plea was knowingly and voluntarily made." *Id.* We conclude that the State failed to meet this burden.

The only witness to testify at the postconviction hearing was Nichelson himself. During the hearing, Nichelson repeatedly testified that he did not understand the elements. Nichelson's testimony, however, was so incredible that the trial court concluded that he in fact did understand the elements.[4] Based on this

---

[4] Despite the reversal, this court is not unsympathetic to the trial court's credibility finding. Part of Nichelson's incredible testimony is exemplified by the following:

Q   So when [your trial attorney] said they'd have to prove you had to touch a girl under a certain age, you didn't understand what that meant?

A   No, I don't. No, I did not understand that.

Q   And you don't understand what a sexual part is, do you?

A   Sexual part is meaning of a–a–

Q   Tell me what they are.

finding, and on Willett's assertion during the plea collo-quy that he and Nichelson discussed the elements charged, the State argues that it met its burden.[5]

In meeting its burden, the State "may examine the defendant . . . to demonstrate that [he] knew and understood the constitutional rights he would be waiv-ing." *Id.* at 145–46, 569 N.W.2d at 584. Thus, where the defendant takes the stand and testifies in such a way as to demonstrate he or she in fact knew and under-stood the charge, the State can properly rely on that testimony. However, we do not agree that a defendant's

A   Is a female part.

Q   Tell me a name of it.

A   The vagina and the male has got a dick.

Q   And you–that you understand those are two of the sexual parts, right?

A   That's male and female, yeah. Why?

Q   Okay. So when [your trial attorney] told you that one of the elements would be that you touched her sexual parts, you knew what that meant.

A   No, I don't.

Q   Which word don't you understand there? You touched her sex-ual parts. What don't you understand?

A   The sexual, I don't–I know the words, but I don't know what the meaning is, what the thing means. Okay. I know the word, okay, but I don't know the meaning. My vocabulary and my reading ain't that great.

Q   So you don't know what sexual parts are even though you just testified under oath and named them, is that–

A   Yeah, yeah.

[5] At the postconviction hearing on Nichelson's motion to withdraw his plea, the State also relied on the fact that the defendant had been convicted of the same charge about ten years earlier and therefore knew the elements. Because the State does not make the same argument on appeal, we deem it abandoned.

denial, no matter how incredible, can establish that he or she both knew and understood the constitutional rights being waived. The State can only meet its burden by providing affirmative evidence that the defendant's plea was voluntarily, knowingly, and intelligently entered.

The State contends that under Wisconsin law, it is permissible to make "negative inferences"; in other words, that this court can conclude that the truth is the opposite of a witness's incredible testimony. For support, the State relies on the following language of Judge Learned Hand, quoted with approval in *Edwards v. State*, 46 Wis. 2d 249, 255, 174 N.W.2d 269, 272 (1970):

> It is true that the carriage, behavior, bearing, manner and appearance of a witness—in short, his "demeanor"—is a part of the evidence. The words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs, and it is abundantly settled that a jury is as little confined to them as we are. They may, and indeed they should, take into consideration the whole nexus of sense impressions which they get from a witness. This we have again and again declared, and have rested our affirmance of findings of fact of a judge, or of a jury, on the hypothesis that this part of the evidence may have turned the scale. *Moreover, such evidence may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies.*

223

*Id.* (quoting *Dyer v. MacDougall*, 201 F.2d 265, 268–69 (2d Cir. 1952)) (emphasis added by the Wisconsin Supreme Court).

We disagree with the State's interpretation of Wisconsin law. The State provides us with no Wisconsin case law that exclusively relies on Hand's legal principle. Although it is true that the *Edwards* court thought there was "reason to recall" Hand's quote, ultimately it did not rely on the principle. After restating the above quote, the court went on to hold that the testimony of the witnesses was sufficient to make the necessary inferences without regard to the witnesses' demeanor and the need for negative inferences. *Id.* [6]

It therefore appears to be an issue of first impression in Wisconsin whether a court can accept a negative inference to establish proof by clear and convincing evidence. Under the beyond a reasonable doubt standard, a negative inference is sufficient only if there is independent support in the evidence. *See Stewart v. State*, 83 Wis. 2d 185, 193, 265 N.W.2d 489, 493 (1978) (overruled on other grounds). We believe that the same rule should apply to the clear and convincing standard in the present case. By requiring the State to prove by clear and convincing evidence that the defendant's plea was voluntarily, knowingly, and intelligently entered, our supreme court must have intended that the State provide some affirmative evidence of the same. It would have been absurd to place this middle burden of

[6] *Edwards v. State*, 46 Wis. 2d 249, 174 N.W.2d 269 (1970), involved a charge of operating a motor vehicle without the owner's consent. Although the defendant took the stand and denied knowing that the car was stolen, there was testimony from other witnesses that the car was stolen, and that the defendant and his brother had gotten into an argument over who the car belonged to.

proof on the State and then allow it to establish its case without presenting any affirmative evidence of the defendant's then-existing mental state.

As we have noted, the right to withdraw a plea is a matter of right when the defendant does not know and understand the nature of the charge. *Van Camp*, 213 Wis. 2d 139–40, 569 N.W.2d at 582. This is because a defendant must understand the nature of the constitutional rights he or she is waiving. *See id.* The defendant must know that he or she is waiving the right to require the State to prove beyond a reasonable doubt each element of the crime. This requires that the record contain some evidence that the defendant knew and understood the essential elements of the crime. *See Bangert*, 131 Wis. 2d at 267, 389 N.W.2d at 23. "This court cannot overemphasize the importance of the trial court's taking great care in ascertaining the defendant's understanding of the nature of the charge." *Id.*

Here, the record is silent with respect to Nichelson's understanding of at least one essential element of the crime charged—the State's duty to prove beyond a reasonable doubt that the sexual contact was for the purpose of sexual gratification. The only direct testimony, however incredible, was that Nichelson did not understand the State had to do so. Nor does the record reveal that Willett explained to Nichelson this essential element. When Willett summarized the essential elements at the plea hearing, the only question asked was whether Nichelson understood that the district attorney would have to prove that he "touched her sexually and sexual parts." This summary is too ambiguous to establish that Nichelson knew or understood the State's duty. On this bare record, we cannot conclude that the State established its burden by clear and convincing evidence.

Ordinarily, the final step in the reviewing court's analysis of an attempt to withdraw a plea is straightforward. If the defendant has met his or her initial burden, and if the State fails to establish by clear and convincing evidence that the defendant knew and understood the constitutional rights waived, the defendant is entitled to withdraw his or her plea. *Van Camp*, 213 Wis. 2d at 151, 569 N.W.2d at 587. Although we agree that Nichelson should be permitted to withdraw his plea, we address the State's final argument that the appropriate relief should instead be to remand the matter for an additional hearing. The State concludes that this remedy is proper in light of a trial court mistake that allegedly prevented it from calling additional witnesses.

In order to clarify this issue, it is necessary for us to relate additional facts. Nichelson's fourth attorney, Paul Moldenhauer, was appointed after Nichelson's conviction and brought motions to vacate the judgment of conviction. The motions alleged the ineffective assistance of counsel and that the plea was not entered knowingly and voluntarily. At the motion hearing, the court concluded that Nichelson made his prima facie case under *Van Camp*, thereby shifting the burden. The only witness the State called to testify on that motion was the defendant. As already noted, Nichelson's testimony was found to be incredible by the trial court.

After the State finished questioning Nichelson, the court stated that it did not believe it could make an accurate determination without hearing from Nichelson's trial attorneys. The court noted that "the best course to follow would be to continue this matter to allow the State to determine which additional witnesses need to be called to meet the burden that's been

placed on it." The court then asked the State how it wished to proceed.

The State argued that the court could proceed in this fashion, or in the alternative could decide the issue at that time. The State noted that Nichelson claimed two grounds for postconviction relief: that his trial counsel was ineffective for ignoring certain evidence, and that the plea was not knowingly and voluntarily entered. As to the former, the State argued that the defendant failed because he did not have the necessary counsel present for the postconviction hearing as required by *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908 (Ct. App. 1979). As to the latter, the State argued that "the Court has a large record in front of it," and on the basis of that could determine that Nichelson did in fact knowingly and voluntarily enter the plea.

After the State's argument, Moldenhauer stated his willingness to let the Court decide the motion based on the record thus far. The State then said, "It's up to you, judge," but the court decided to continue the hearing because it wanted direct evidence from Nichelson's trial attorneys.

During the continuance, Moldenhauer subpoenaed Willett, and the State allegedly subpoenaed Lex.[7] Willett objected to his subpoena, relying in part on Nichelson's lack of capacity to waive attorney-client privilege. The trial court heard the motion by telephone

---

[7] Proof of service on Lex was never put into the record, possibly because Nichelson's appellate attorney objected to filing it during the continued postconviction hearing. The State also contended that it would have subpoenaed Willett, but did not do so because "the court had ordered defendant's postconviction counsel to subpoena him." Our review of the record, however, demonstrates that the State's recollection is mistaken.

conference. For reasons not clear in the record, Molden-hauer was not present at the hearing. After Willett argued that the attorney-client privilege should apply, the court asked the State to state its position. The State responded:

Well, it's my position, Judge, that the Defendant is bringing an allegation of ineffective assistance of counsel with both, regard with–regard to both Mr. Lex and Mr. Willett. I believe that the Machner case requires their testimony at a post-conviction motion hearing. If the defendant is not able to produce them and have that hearing, then I think he loses, and I think that would be great.

The trial court agreed with Willett, and quashed both his and Lex's subpoenas. Thereafter, the hearing on Nichelson's postconviction motions was reconvened, and the trial court denied his motions.

The State argues on appeal that if we conclude that it has not met its burden by clear and convincing evidence, the proper remedy is to remand the matter with directions to permit the State to question Willett and Lex. The State argues that it was deprived of this evidence by the wrongful quashing of the subpoenas.[8] We conclude that the State waived this remedy.

"Waiver is defined as a voluntary and intentional relinquishment of a known right." *Bank of Sun Prairie v. Opstein,* 86 Wis. 2d 669, 681, 273 N.W.2d 279, 284

---

[8] The State's right to question a defendant's attorney when the defendant alleges that the attorney failed to properly inform him or her before entering a plea is established in *State v. Van Camp,* 213 Wis. 2d 131, 145, 569 N.W.2d 577, 584 (1997). The defendant is considered to have waived the attorney-client privilege. *State v. Simpson,* 200 Wis. 2d 798, 806, 548 N.W.2d 105, 108 (1996).

(1979). "[T]he waiver rule is one addressed to the efficient administration of judicial business." *State v. Milashoski*, 159 Wis. 2d 99, 109, 464 N.W.2d 21, 25 (Ct. App. 1990). Whether we apply it is addressed to our discretion, and we may do so where the interests of justice require. *Id.*

■

We conclude that the State waived the right to claim this remedy because it acquiesced with the trial court's quashing of the subpoenas and made no efforts to introduce the testimony of Nichelson's trial attorneys. The record reflects that the State strategically decided to allow the court to proceed without this evidence because it considered the ruling more harmful to Nichelson's ineffective assistance of counsel argument than to its own argument that Nichelson's plea was voluntarily and knowingly entered. Now that the State realizes it made a mistake, it is requesting this court to give it another opportunity to meet its burden. We do not believe the interests of justice requires us to give the State this second chance.

Further, we do not believe that remanding this matter for an additional hearing is in the interests of the efficient administration of justice. Furthering such interests is one of the purposes of the waiver rule. *Milashoski*, 159 Wis. 2d at 109, 464 N.W.2d at 25. In the present case, the State's failure to object prevented the court from correcting its mistake, and admitting the testimony of the trial attorneys. Efficiency concerns would not be served if we now remanded the matter for this testimony after the State erroneously concluded that it was unnecessary to its case.

The State contends that this court is prohibited from applying the waiver rule by *State v. Holt*, 128 Wis. 2d 110, 382 N.W.2d 679 (Ct. App. 1985). We do not

consider *Holt* to be controlling. In *Holt*, this court concluded that the waiver rule should not apply to arguments made by a respondent seeking to uphold the result reached at trial. *Id.* at 124, 382 N.W.2d at 686–87. This was because efficient judicial administration was not affected by a respondent who "does not ask that the matter be tried again but merely asserts that the appellant's argument in favor of reversal is without merit." *Id.* Because this court can affirm a trial court's result on its own reasoning, it was considered in *Holt* to be "inconsequential" whether the ground for upholding the decision was presented by the respondent rather than suggesting itself sua sponte. *Id.* at 124–25, 382 N.W.2d at 686–87.

The State's argument is not persuasive. The State is not "merely assert[ing] that the appellant's argument in favor of reversal is without merit." Because of the State's earlier strategic decision to avoid offering into evidence the trial attorneys' testimony, we cannot determine if Nichelson understood the nature of the crime charged. Instead of asking us to affirm the trial court's decision on other grounds, therefore, the State is asking us to remand the matter for a factual determination that it hopes *might* support the trial court's result.

This court is reluctant to apply *Holt* where actions by the State prevented a complete fact-finding on an issue that could have been resolved at the trial court. For example, in *Milashoski*, the State asserted for the first time on appeal that the defendant lacked standing to challenge the seizure of physical evidence. Because its earlier decision prevented the development of a full factual basis for review, the court concluded that the State waived the issue. *Id.* at 109, 464 N.W.2d at 25. "To relax the waiver rule in favor of the state makes no

sense and does not serve either the efficient administration of judicial business or the interests of justice." *Id.* We also conclude that *Holt* does not prevent our application of the waiver rule, and hold that the efficiency and justice concerns require us to apply it. We therefore remand the case to the trial court with the direction to grant Nichelson's motion to withdraw his plea.

    *By the Court.*—Judgment and order reversed, and cause remanded with directions.