STATE of Wisconsin, Plaintiff-Respondent,

v.

Everardo A. LOPEZ, Defendant-Appellant.

Court of Appeals

*No. 00–3070–CR. Submitted on briefs September 6, 2001.—
Decided October 24, 2001.*

2001 WI App 265

(Also reported in 637 N.W.2d 468.)

44

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Margaret A. Maroney*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brett A. Balinsky*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. Everardo A. Lopez appeals from a judgment of the circuit court convicting him of first-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1) (1999–2000).[1] Lopez also appeals from an order denying his amended postconviction motion to

---

[1] WISCONSIN STAT. § 948.02(1) provides:

FIRST DEGREE SEXUAL ASSAULT. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony.

WISCONSIN STAT. § 948.01 provides the relevant definition:

(5) "Sexual contact" means any of the following:

(a) Intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant.

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

withdraw his no contest plea.[2] We hold that Lopez fulfilled his plea withdrawal requirements under *State v. Bangert*, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986). Therefore, the circuit court erred when it assigned to Lopez the burden of showing "by clear and convincing evidence" the grounds for withdrawal of his plea. We reverse the judgment and order of the circuit court.

¶ 2. On May 13, 1999, the State charged Lopez with first-degree sexual assault as a repeater. The repeater allegation was based on Lopez's conviction in Kenosha County Circuit Court of one count of receiving stolen property and one count of theft (No. 98–CF-181). In exchange for Lopez's plea, the State moved to dismiss the repeater allegation.

¶ 3. A plea hearing was held on September 8, 1999.[3] The circuit court began by explaining the charge against Lopez:

> First, you . . . had sexual contact with [the complainant.]
>
> . . . .
>
> [Second], the sexual contact . . . was either for the purpose of sexual arousal or gratification. [Third, the complainant] had not attained the age of 13 years at the time of the alleged sexual contact.
>
> . . . .

[2] Lopez filed a motion and an amended motion. This appeal involves an issue raised in the amended motion.

[3] From our review of the record, it appears that Lopez had the assistance of a Spanish-English interpreter during all but one proceeding. That proceeding was a brief scheduling hearing.

> Sexual contact is the intentional touching by you of an intimate bodily part of [the complainant]; in this case they're saying the buttocks or her vaginal area.
>
> The touching can be directly or it may be through clothing. And they're saying in this case it was through her clothing with the use of your hand.

¶ 4. The court then asked Lopez whether he understood the charge of first-degree sexual assault including what the State said that he had done. *Lopez did not acknowledge an understanding of the charge or its elements.* Instead, he responded to the court's question by stating: "That, about those three charges, are not true." Lopez's denial prompted the court to stop the colloquy and set the case for a jury trial. Lopez's attorney told the court that he did not think Lopez understood what the court was telling him. The court adjourned the hearing and set a trial date, stating that it would also set an earlier further proceeding date that could be used as a plea hearing "if [Lopez] understands what they're saying he did."

¶ 5. On October 14, 1999, a full plea hearing was held. The court began by stating:

> It's my understanding that apparently the parties had had further discussions, *that the interpreter who was last with Mr. Lopez had some communication problems and he may not have understood what was being discussed concerning the charge and the rights he'd be waiving* and, therefore, we have a different interpreter. (Emphasis added.)

After this, the parties indicated that Lopez was prepared to accept the plea bargain and the court began the plea colloquy:

> [Court] Okay. What . . . is your understanding of the agreement . . . you have with the State?

49

[Defense Counsel] He [Lopez] is pleading to the charge of violating Section 948, first degree sexual assault. The State would be dropping the repeater allegation. Maximum penalty is up to 40 years imprisonment. And the State would not issue any other crime arising out of this incident.

[Court] Okay. [State?]

[State] [T]hat's a correct recitation of the extent of the offer.

[Court] And, Mr. Lopez, is that your understanding of the agreement with the State?

[Lopez] Yes, although the State doesn't have any more difficulties.

[Court] Okay. Mr. Lopez, in terms of the charge, they're saying you had sexual contact with a person who has not attained the age of 13 years.

. . . .

[Court] [This sexual contact] happened on May 11 of this year. . . . And they're saying that the contact can be the intentional touching of the intimate bodily part of another, whether clothed or unclothed, and they're saying you touched her vaginal area through her clothing with your hand. Do you understand the charge of first degree sexual assault, sir?

[Lopez] Yes, but I didn't touch her. All I did was push her and that's all.

[Court] Okay.

. . . .

[Lopez] What they're saying that I touched her where they're saying that I touched her that's not true.

50

[Court] Okay. Did you touch her at any intimate bodily part—her buttocks, her breasts, anywhere—with your hand?

[Lopez] I didn't touch her there. I touched her here.

[Court] The arms?[4]

¶ 6. At this point, the court stopped the colloquy and stated that it would instead take up a motion by the State. Lopez's attorney interjected:

[Defense Counsel] Could I just ask [Mr. Lopez] something?

[Court] Yeah. Sure.

(Discussion off the record between [Defense Counsel] and the defendant)

[Lopez] I accept it.

[Court] Okay it's not—it's hard for me to do that . . . when he didn't do anything wrong.

[Defense Counsel] Okay. Your Honor—

[Court] I'd rather have the jury decide.

. . . .

[Defense Counsel] [Lopez] does not have a memory of this particular occurrence. . . .

So we've gone over this numerous times . . . . He doesn't remember actually touching the girl but . . . that doesn't stop the fact that he did that.

---

[4] The transcript does not indicate where Lopez pointed, and we can only assume it was to the arms given the court's statement.

[Court] But he seems to indicate to me ... that he clearly remembers only touching her about the shoulders see. What I'm saying? If he said I don't remember the incident, that might be one thing, but he apparently remembers the incident but he remembers, from my vantage point, touching her only in the shoulder area, nowhere else. I mean, that's a little different.

[Defense Counsel] Okay. Could we just approach it a different way?

[Court] Sure.

[Defense Counsel to Lopez] Do you understand that's what they're saying, that you touched her—you understand that—in her intimate part. And we—you are agreeing you are to plea to that charge. Is that your understanding?

[Lopez] I'm pleading guilty but there are times when I lose my memory.

[Court] Okay.

[Court] Now, Mr. Lopez, you understand that if I accept your plea to the charge, I will find that you did the acts they say you did in the complaint. Do you understand that? Even if—even if you don't remember them occurring. Do you understand that?

[Lopez] Understood.

. . . .

[Court] For the record, then, what is your plea to the charge of first degree sexual assault occurring on May 11, 1999 as charged in the Information as amended?

[Lopez] No contest.

¶ 7. The court found that Lopez's plea was intelligent and voluntary. The court convicted Lopez and sentenced him to fifteen years in prison.

¶ 8. Following his conviction and sentencing, Lopez filed a motion seeking to withdraw his no contest plea. In it, Lopez alleged that the circuit court failed to establish his understanding of the charge pursuant to WIS. STAT. § 971.08(1)(a).[5] He argued that he did not understand that the touching must be for the sexual gratification of the defendant or the degradation or humiliation of the victim. He also argued that he did not know what it meant to be charged "as a repeater" and that therefore he did not understand the plea agreement. (The State agreed to dismiss the repeater allegation as part of the plea agreement.)

¶ 9. A postconviction motion hearing was held on October 31, 2000. Lopez first argued that he did not understand an element of the offense, specifically, that the sexual contact had to be for sexual gratification. He testified that he did not know what sexual gratification meant and that the court failed to describe this element in the plea colloquy. Second, he contended that the burden was on the State to show that he in fact understood this element. Lopez then requested permission to withdraw his plea because the State had not met its burden.

¶ 10. The court disagreed, finding that the elements were fully explained to Lopez, that he knew the elements and that he knew what he was pleading to. The court also disagreed with Lopez's characterization of the burden of proof:

---

[5] WISCONSIN STAT. § 971.08(1)(a) provides in relevant part that "[b]efore the court accepts a plea of guilty or no contest, it shall . . . [a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted."

The burden is on the defendant in this type of hearing to show by clear and convincing evidence that there are grounds for withdrawal of the plea, either not being knowingly or voluntarily made or failure to understand various of the rights that the person would be waiving.

## Discussion

¶ 11. Lopez appeals his judgment of conviction and the denial of his motion to withdraw his plea. Lopez argues that he made a prima facie showing that the plea colloquy was inadequate and that he did not understand the element of sexual gratification. Lopez also argues that the circuit court erroneously allocated the burden of proof to him even after he made a prima facie showing that the plea colloquy was inadequate and that he did not understand the element of sexual gratification.

¶ 12. This case involves questions of law and constitutional fact. The determination of who has the ultimate burden of proof and whether that party has satisfied the requisite burden of proof are questions of law that we review independently. *Currie v. DILHR*, 210 Wis. 2d 380, 387, 565 N.W.2d 253 (Ct. App. 1997). The determination of whether a plea is knowingly and intelligently entered presents a question of constitutional fact. *State v. Bollig*, 2000 WI 6, ¶ 13, 232 Wis. 2d 561, 605 N.W.2d 199. Questions of constitutional fact require a two-part review. First, we look to the historical and evidentiary facts as found by the trial court and review those findings under a clearly erroneous standard. *State v. Hajicek*, 2001 WI 3, ¶ 15, 240 Wis. 2d 349, 620 N.W.2d 781. Second, we independently review the trial court's determination of constitutional fact. *Id.* When a defendant seeks to withdraw a plea after

sentencing, he or she must show by clear and convincing evidence that the withdrawal of the plea is necessary to correct a manifest injustice. *State v. Schill*, 93 Wis. 2d 361, 383, 286 N.W.2d 836 (1980).

¶ 13. We hold that Lopez fulfilled his plea withdrawal requirements by making a prima facie showing that the plea colloquy was inadequate and by alleging that he did not understand an element of the offense. We also hold that the circuit court improperly placed the burden of proof on Lopez. Where the defendant has shown a prima facie violation of WIS. STAT. § 971.08(1)(a) or other mandatory duties and alleges that he or she in fact did not know or understand the information which should have been provided at the plea hearing, the burden will then shift to the State to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record at the time of the plea's acceptance. *Bangert*, 131 Wis. 2d at 274.

¶ 14. The record demonstrates that the circuit court was clearly erroneous in finding that Lopez understood what he was pleading to. At the full plea hearing on October 14, 1999, the circuit court began by acknowledging that at the September 8, 1999 plea hearing, Lopez may not have understood what was being discussed concerning the charge and the rights he would be waiving.

> It's my understanding that apparently the parties had had further discussions, *that the interpreter who was last with Mr. Lopez had some communication problems and he may not have understood what was being discussed concerning the charge and the rights he'd be waiving* and, therefore, we have a different interpreter. (Emphasis added.)

The circuit court then proceeded to conduct a plea colloquy, which ended with the acceptance of Lopez's plea.

¶ 15. At the plea withdrawal hearing on October 31, 2000, the circuit court admitted that during the full plea hearing on October 14, 1999, it had not explained the concepts of a sexual assault charge. The court did not find this an inadequacy because it said it had explained the elements and concepts at the attempted plea hearing on September 8, 1999, and thus relied on this exchange as evidence that the concepts were explained and understood.[6]

¶ 16. However, at the September 8, 1999 hearing, the circuit court gave little, if any, credence to the attempted colloquy.[7] Instead, it ended the colloquy and set a trial date. In so doing, the court told Lopez's

---

[6] The court said:

[I]t is true that [at the] full plea hearing, I should say, which was October 14, 1999, although the Court went through the essential elements of sexual assault, the Court at that time did not repeat or explain some of the concepts of sexual arousal or gratification, etc.

However, the Court did at the hearing on September 8, 1999, which was cut short ... discuss the concepts that—what the sexual contact would have to be, that it was for the purpose of arousal or gratification, and through the clothed or unclothed part.

Although the defendant did not acknowledge at that point because he pointed out that the charges were not true, the Court did explain the concepts.

[7] The court said:

I'm not going to try to do this.

. . . .

I wasn't even at what he was waiving at this point. I was telling him what they said he did and he's saying he didn't do anything. That won't even get us beyond the plea form.

56

attorney that it would also set a further proceeding date which could function as a plea hearing "if [Lopez] understands what they're saying he did, what he'd be acknowledging, etc."

¶ 17. We hold that the court's colloquy of September 8, 1999, cannot be relied upon by the court to show that it fulfilled its duty under WIS. STAT. § 971.08(1)(a). Even though the September 8, 1999 transcript shows that the circuit court mentioned the elements and some of the concepts, it does not show that the circuit court "determine[d]," as it is required to do under § 971.08(1)(a), that Lopez had an "understanding of the nature of the charge." Sec. 971.08(1)(a). In fact, after Lopez said "[t]hat, about those three charges, are not true," the circuit court seemed to determine the opposite. It stopped the colloquy and set the case for trial.

¶ 18. Moreover, at the full plea hearing on October 14, 1999, the circuit court began by questioning the reliability of the September 8, 1999 hearing: "It's my understanding that apparently . . . [there were] some communication problems and [Lopez] may not have understood what was being discussed concerning the charge and the rights he'd be waiving."[8] Nonetheless, at the withdrawal hearing, the court relied on the September 8, 1999 hearing as evidence of Lopez's understand-

[8] Specifically, the court acknowledged that the translator present at the September 8, 1999 hearing had communication problems and that Lopez therefore may not have understood what was discussed during that hearing. Under WIS. STAT. § 971.08(1)(a), the court has the duty to determine that the defendant understands the nature of the charge; this duty certainly encompasses the duty to ensure that a foreign language defendant is assisted by a competent translator.

ing of the plea: "However, the Court did at the hearing on September 8, 1999 . . . discuss the concepts. . . ." The court cannot simultaneously acknowledge that at the September 8, 1999 hearing Lopez may have not understood the charge and the rights he would be waiving and then find that based on the September 8, 1999 hearing, he made a knowing and voluntary plea. It follows that we cannot rely on this part of the record to show that Lopez made a knowing and voluntary plea.

■

¶ 19. Nor can we rely upon the plea questionnaire to show that Lopez made a knowing and voluntary plea.[9] The plea questionnaire is in Spanish and the record does not include an English translation. We cannot determine whether a defendant has made a knowing and voluntary waiver of rights from a record that does not provide an English translation of what was provided to the defendant. *See State v. Santiago*, 206 Wis. 2d 3, 12, 556 N.W.2d 687 (1996). In *Santiago*, the issue was whether the State, in proving the sufficiency of *Miranda* [10] warnings and a knowing and intelligent waiver of *Miranda* rights, must present

---

[9] A defendant's ability to understand the rights being waived may be greater when he or she is given a written form to read in an unhurried atmosphere, as opposed to reliance upon oral colloquy. *State v. Moederndorfer*, 141 Wis. 2d 823, 828, 416 N.W.2d 627 (Ct. App. 1987). The trial court can accurately assess a defendant's understanding of what he or she has read by making a record that the defendant had sufficient time prior to the hearing to review the form, had an opportunity to discuss the form with counsel, had read each paragraph, and had understood each one. *Id.* On review, we too look to forms in the record in order to assist us in assessing a defendant's understanding. *See id.* at 827–28.

[10] *Miranda v. Arizona*, 384 U.S. 436 (1966).

evidence of the words spoken by a law enforcement officer advising a suspect of the *Miranda* rights in a language other than English and the translation of the words. *Santiago*, 206 Wis. 2d at 10. The court held that because the record did not contain an English translation of the *Miranda* warnings given to the defendant, the record provided an inadequate basis for any findings of the sufficiency of the Spanish-language *Miranda* warnings or the validity of the waiver. *Santiago*, 206 Wis. 2d at 12. We hold that under *Santiago*, the record provides an inadequate basis for any findings of sufficiency of the Spanish-language plea questionnaire or the validity of the no contest plea based on this questionnaire.

¶ 20. Given that Lopez made a prima facie showing that there was a violation of WIS. STAT. § 971.08(1)(a) by the circuit court, and given that Lopez alleged that he in fact did not know or understand the information which should have been provided at the plea hearing, the burden shifted to the State to show by clear and convincing evidence that Lopez's plea was knowingly, voluntarily, and intelligently entered. *See Bangert*, 131 Wis. 2d at 274. Therefore, the circuit court erred when it assigned to Lopez the burden of showing "by clear and convincing evidence" the grounds for withdrawal of his plea. We reverse the order and judgment of the circuit court.

¶ 21. Finally, we observe that in a March 12, 2001 summary reversal motion, the State argued that "[t]he trial court did not mention or consider the multi-part test for post-trial withdrawals of guilty pleas under [*Bangert*]." It also pointed out:

At no point during the October 31, 2000 postconviction motion hearing did the trial court consider or mention

59

any evidence shown or adduced by the [S]tate on the issue of whether or not Lopez had entered into the plea in a knowing, intelligent and voluntary fashion, nor did the court make a ruling on whether, if the burden of proof had switched from the defendant to the [S]tate, the [S]tate had met its burden of proof.

We agree with the State that the record does not contain any affirmative evidence offered by it to show that Lopez's plea was voluntarily, knowingly, and intelligently entered.

¶ 22. The proper remedy upon determining that the State failed to establish that Lopez understood the elements of the offense with which he was charged when he entered his no contest plea is to remand the case to permit Lopez to withdraw his plea. *State v. Nichelson*, 220 Wis. 2d 214, 226, 582 N.W.2d 460 (Ct. App. 1998).

¶ 23. In *Nichelson*, as in the case before us, the defendant moved to withdraw his no contest plea following entry of the judgment of conviction on the charge of first-degree sexual assault of a child under the age of thirteen. *Id.* at 216. The trial court found that Nichelson made a prima facie showing that his plea was not voluntary and the burden shifted to the State. *Id.* at 221. The trial court stated that it "did not believe it could make an accurate determination [as to whether Nichelson's plea was voluntary] without hearing from Nichelson's trial attorneys." *Id.* at 226. As the hearing continued, it was decided by the trial court, and acquiesced to by the State, that Nichelson's attorneys would not testify. *Id.* at 228. Thereafter, the hearing on Nichelson's postconviction motions was reconvened and the trial court denied his motions. *Id.* On appeal, the State argued that if we concluded that it had not met its

burden, the proper remedy was to remand the matter with directions to permit it to question Nichelson's attorneys. *Id.* The State argued that it was deprived of this evidence by the wrongful quashing of the subpoenas. *Id.* We disagreed and concluded that the State waived the right to claim this remedy because it acquiesced with the trial court's quashing of the subpoenas *and* made no efforts to introduce the testimony of Nichelson's trial attorneys. *Id.* at 229.

¶ 24. *Nichelson* is instructive even though we do not apply waiver to the case at hand.[11] The State did not meet its burden in *Nichelson*, and the State has not met its burden here. At the plea withdrawal hearing, the State did not make any attempts to make a record fulfilling its burden. We do not remand for a hearing to give the State a second opportunity to make an affirmative showing that Lopez's plea was voluntarily entered because we conclude that under *Nichelson*, when the State has failed to meet its burden of proof in a plea withdrawal setting, it should not get a "second kick at the cat."

*By the Court.*—Judgment and order reversed and cause remanded with directions.

---

[11] Waiver is not applied because, unlike in *State v. Nichelson*, 220 Wis. 2d 214, 582 N.W.2d 460 (Ct. App. 1998), here the State is consistent and maintains the same position at the trial court level as it does on appeal: that Lopez did not meet his burden of proof.