STATE of Wisconsin,
Plaintiff-Respondent,

v.

Monika S. LACKERSHIRE,
Defendant-Appellant.†

Court of Appeals

*No. 2005AP1189–CR. Submitted on briefs October 3, 2005.
—Decided November 15, 2005.*

2005 WI App 265

(Also reported in 707 N.W.2d 891.)

610

611

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Monika Lackershire appeals a judgment of conviction for one count of second-degree sexual assault of a child, contrary to Wis. Stat. § 948.02(2), and an order denying her postconviction motion seeking plea withdrawal or resentencing.[1] Lackershire argues her plea was not knowing, intelligent, and voluntary because: (1) she did not understand the elements of her crime; (2) she did not understand the nature of read-in offenses; and (3) she was coerced into accepting a plea agreement because she feared harm to her unborn child if she had to endure the stress of a trial. We discern no error and affirm the judgment and order.

## Background

¶ 2. In November 2003, then twenty-year-old Lackershire was charged with one count of sexual assault of a child, contrary to Wis. Stat. § 948.02(2), which states: "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony." The charge was based on an alleged act of intercourse involving then fourteen-year-old Stephen G. In another Pepin County case, Lackershire was charged with the same offense against Joseph C., also fourteen. Based on the prelimi-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

nary hearing in this case, a second count of second-degree sexual assault was added in December 2003. The case involving Joseph also eventually had a second charge added.

¶ 3. Following plea negotiations with the State, Lackershire agreed in March 2004 to plead guilty to count one regarding Stephen. The State agreed to dismiss the second count and both charges in Joseph's case. The parties did not discuss whether the charges would be read in at sentencing. After a colloquy with Lackershire, the court accepted her plea and ordered a presentence investigation. The PSI treated the three dismissed charges as read-ins and discussed them as such.

¶ 4. The court ultimately sentenced Lackershire in August 2004 to three years' initial confinement plus six years' extended supervision. In February 2005, Lackershire filed a postconviction motion seeking plea withdrawal or sentence modification. The court denied the motion and Lackershire appeals.

### Discussion

¶ 5. When a defendant seeks to withdraw a guilty plea after sentencing, he or she "carries the heavy burden of establishing, by clear and convincing evidence, that withdrawal of the plea is necessary to correct a manifest injustice." *State v. Fosnow*, 2001 WI App 2, ¶ 7, 240 Wis. 2d 699, 624 N.W.2d 883 (citation omitted). Whether to allow plea withdrawal is generally committed to the trial court's discretion, meaning this court will reverse only if the trial court has erroneously exercised that discretion. *Id.*

¶ 6. However, even after sentencing, a defendant may withdraw a plea as a matter of right if it is established that a violation of constitutional magnitude occurred during entry of the plea. *See State v. Garcia*, 192 Wis. 2d 845, 864, 532 N.W.2d 111 (1995). A guilty or no contest plea must be knowing, intelligent, and voluntary to pass constitutional muster. *See State v. Bangert*, 131 Wis. 2d 246, 257–61, 389 N.W.2d 12 (1986). We review such constitutional questions de novo. *Garcia*, 192 Wis. 2d at 864–65.

## Elements of the Crime

¶ 7. To successfully withdraw her plea as unknowing, unintelligent, or involuntary based on miscomprehension of the elements of the crime, Lackershire must make a prima facie showing that the court violated WIS. STAT. § 971.08 by failing to determine she understood the elements of the crime to which she was pleading.[2] *See State v. Brandt*, 226 Wis. 2d 610, 617–18, 594 N.W.2d 759 (1999). Whether Lackershire made such a showing presents a question of law. *See id.* at 618. If Lackershire has made this showing, the burden then shifts to the State to show, by clear and convincing evidence, that the plea was nonetheless knowing, intelligent, and voluntary. *See Garcia*, 192 Wis. 2d at 865–66.

¶ 8. Initially, we note that in a plea withdrawal motion like Lackershire's, "the motion must include

---

[2] WISCONSIN STAT. § 971.08(1)(a) requires the court to "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted."

facts that allow the reviewing court to meaningfully assess the defendant's claim." *State v. Allen*, 2004 WI 106, ¶ 21, 274 Wis. 2d 568, 682 N.W.2d 433 (citation omitted). Here, Lackershire contends the plea procedure was defective because "the elements [of her crime] were never incorporated in the plea questionnaire, nor were they discussed or recited on the record at the time of the plea taking." Second-degree sexual assault of a child has two elements: (1) sexual intercourse (2) with a person under sixteen years of age. Lackershire never alleges which element she misunderstood.

¶ 9. Lackershire argues "[s]he believed she had a defense to the charge because she was [allegedly] raped by the boy, thereby suggesting her misunderstanding that consent was somehow an issue in the case." However, she cites no authority for her implicit proposition that the trial court must explain away everything that is not an element of the charged crime.[3] Moreover, the record reveals the court did explain the elements of the crime to Lackershire, as reflected by this exchange:

> THE COURT: Can you tell me what charge -- what the charge is that you're going to enter a plea to?
>
> MS. LACKERSHIRE: I believe it's the sexual assault of a child under the age of sixteen.
>
> THE COURT: The Information in this case . . . alleges that, in August of 2003 . . . in this county, *you had sexual intercourse with a child under the age of sixteen years.*
>
> Do you understand that?

---

[3] Indeed, a valid plea generally results in waiver of all defenses. *See State v. Aniton*, 183 Wis. 2d 125, 129, 515 N.W.2d 302 (Ct. App. 1994). To the extent her attorney may not have informed her of this consequence, Lackershire has not raised an ineffective assistance of counsel argument.

MS. LACKERSHIRE: Yes.

THE COURT: Is that true?

MS. LACKERSHIRE: Yes.

THE COURT: Do you understand it's alleged that this is a violation of Section 948.02 of the Wisconsin Statutes?

MS. LACKERSHIRE: Yes. (Emphasis added.)

¶ 10. "A circuit court is given discretion to tailor the colloquy to its style and to the facts of the particular case . . . ." *Brandt*, 226 Wis. 2d at 620. Here, the elements of the crime are set forth in plain, easily understood language in the statute. Thus, there is no need for a complicated plea colloquy when the statute is straightforward. The court asked if Lackershire understood it was alleged she had sexual intercourse with someone under sixteen years of age—encompassing both elements—and Lackershire answered affirmatively. In addition, Lackershire and her attorney acknowledged counsel had explained how evidence in the State's possession related to both elements and would be sufficient to justify finding Lackershire guilty. In short, Lackershire has failed to establish a deficient plea colloquy and we need not examine factors or the record beyond that hearing.[4]

---

[4] Lackershire's attempted analogy to *State v. Nichelson*, 220 Wis. 2d 214, 582 N.W.2d 460 (Ct. App. 1998), is unavailing. In *Nichelson*, we concluded that the State failed to present any evidence the defendant's plea was knowing, intelligent, and voluntary. Lackershire likewise complains that the State has presented no evidence about the nature of her plea.

## The Nature of Read-Ins

¶ 11. Lackershire next argues her plea was not knowing, intelligent, or voluntary because she "had no knowledge or understanding that the dismissed charges were to be treated as read-ins, nor that the read-in procedure was the equivalent of an admission to criminal activity." She further asserts "the accused must have actual knowledge and understanding of the read-ins." The State asserts understanding of read-ins is not a requirement for a valid plea because read-ins represent an indirect consequence of the plea. We agree with the State that understanding the read-ins is not required for this court to hold a plea is valid.

¶ 12. The trial court rejected as self-serving Lackershire's postconviction testimony that she believed the charges she was not pleading to would be

There is one key difference. The record in *Nichelson* was absolutely silent regarding one element of the crime. Nichelson had been charged under Wis. Stat. § 948.02(1), first-degree sexual assault of a child under the age of thirteen. Unlike Lackershire, who engaged in intercourse with her victim, Nichelson allegedly engaged in sexual *contact* with his victim. Sexual contact, by definition, requires the touching to be intentional and for the purpose of defendant's sexual arousal or gratification. Wis. Stat. § 948.01(5)(a). The colloquy failed to discuss this component, a deficiency exacerbated by Nichelson's borderline mental retardation.

Thus, Nichelson had established the court failed to ascertain his understanding of all the elements, contrary to Wis. Stat. § 971.08, shifting the burden of proof to the State. Lackershire fails to establish the threshold showing, meaning the burden has not shifted to the State. Thus, the State is not compelled to produce extraneous evidence regarding the nature of her plea.

dismissed outright.[5] In reaching its determination, the court noted Lackershire never disputed the State's assertion at sentencing that she had engaged in the conduct underlying all four charges. Rather, she stated she took responsibility for what she had done. Credibility determinations are the province of the trial court. *See In re Estate of Dejmal*, 95 Wis. 2d 141, 151–52, 289 N.W.2d 813 (1980).

¶ 13. Further, the PSI treated the three dismissed charges as read-ins, discussing them in that context. When asked if they had reviewed the PSI, Lackershire and her counsel confirmed that they had, and that there were no errors in it. Finally, Lackershire had completed and signed the plea questionnaire that explained the nature of read-ins—that they do not increase a sentence, although restitution may be ordered, and the State is prohibited from prosecuting those crimes in the future. These factors all undercut Lackershire's contention she did not know there would be read-ins or what read-ins were.

¶ 14. In any event, Lackershire presents no authority for the proposition that the accused must have actual knowledge and comprehension of read-ins for the plea to be valid. Indeed, the case she cites in an attempt to establish such a proposition states, "In the absence of any objection to the crimes being read in, the court may assume that the defendant admits them for purposes of being considered at sentencing." *State v. Cleaves*, 181

---

[5] We point out that while the State admits it made no mention of read-in offenses at the plea hearing, Lackershire has not alleged the State breached its plea agreement by surreptitiously adding the read-ins at sentencing.

Wis. 2d 73, 80, 510 N.W.2d 143 (Ct. App. 1993). As noted, Lackershire raised no objection at sentencing.

¶ 15. Also, "[i]nformation about 'collateral consequences' of a plea . . . is not a prerequisite to entering a knowing and intelligent plea." *State v. Byrge*, 2000 WI 101, ¶ 61, 237 Wis. 2d 197, 614 N.W.2d 477. Collateral or indirect consequences of a plea are those that, among other things, do not increase the range of a defendant's potential punishment. *See id.*, ¶¶ 60–61. Because read-ins do not increase the range of punishment, they are indirect consequences and their knowledge is not required for a defendant to enter a knowing, intelligent, or voluntary plea.[6]

¶ 16. Moreover, no manifest injustice occurred as a result of the read-ins. First of all, Lackershire received the benefit of the bargain—three of her charges were dismissed and the State is prohibited from recharging them. Lackershire was not ordered to pay restitution on the dismissed charges, nor did she object to the read-ins in the PSI. Finally, even if the charges should not have been available as read-ins, the sentencing court is allowed to consider both charged and uncharged behavior. Such consideration allows the court to evaluate whether the behavior a defendant is convicted of represents isolated behavior or an ongoing pattern. *See, e.g., State v. McQuay*, 154 Wis. 2d 116, 126, 452 N.W.2d 377 (1990). Thus, it is likely the court would have evaluated Lackershire's interactions with Stephen and Joseph in any event.

---

[6] We nonetheless encourage courts taking pleas to verify, on the record, whether dismissed charges will be treated as read-ins and ensure that the defendant understands what having a read-in means, although we decline to craft any bright line rule.

## Coercion

¶ 17. Lackershire was pregnant at the time of plea negotiations. About a month before deciding to accept a plea agreement, she was hospitalized for complications relating to the pregnancy. When she was released, she was directed to maintain bed rest and avoid stressful situations.

¶ 18. Lackershire asserts "she was informed she could not postpone the April 19, 2004, trial under any circumstances." She testified at the postconviction hearing that she "felt that [she] was forced into making a plea to save [her] daughter." She eventually gave birth to a healthy daughter on April 27, 2004.

¶ 19. We discern no coercion. Lackershire does not show she ever asked the court to postpone her trial date, only that a prosecutor with no jurisdiction over the docket would have resisted the request. Lackershire also does not argue that the plea agreement was contingent upon her forgoing an extension request. During the colloquy, Lackershire assured the trial court that no threats had been made to secure her plea and she assured the court that, despite her health care and medications, she was prepared to accept the agreement and enter the plea. At the end of the plea hearing, the court asked Lackershire if she wanted to change her plea for any reason. She said no. Likewise, her attorney also did not know of any reason why Lackershire should not accept the plea. Finally, Lackershire has offered absolutely no medical evidence that going forward with the trial would have posed a risk to her pregnancy.

¶ 20. Accordingly, the court considered her postconviction testimony on this matter self-serving and unreliable. Indeed, Lackershire implicitly suggests she

lied to the court during the colloquy when she denied any threats and stated there was no reason why she might want to change her plea. This is insufficient to render the plea unconstitutional. *See State v. Morse*, 2005 WI App 223, ¶ 11, 287 Wis. 2d 369, 706 N.W.2d 152 (No. 2004AP2658–CR); *Johnson v. United States*, 539 F.2d 1241, 1244–45 (9th Cir. 1976).

¶ 21. Finally, we note that in most circumstances, pregnancy is the result of a conscious and consensual choice to engage in sexual intercourse. When that is the case—as it appears to be here—the pregnancy is a "self-imposed coercive element" that will not render a plea involuntary. *See Blaszke v. State*, 69 Wis. 2d 81, 90–91, 230 N.W.2d 133 (1975); *Craker v. State*, 66 Wis. 2d 222, 229, 223 N.W.2d 872 (1974); *State v. Albrecht*, 184 Wis. 2d 287, 302, 516 N.W.2d 776 (Ct. App. 1994).

*By the Court.*—Judgment and order affirmed.